IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 18, 2019 Session

## KELLY COLVARD PARSONS v. RICHARD JEARL PARSONS

**Appeal from the Circuit Court for Shelby County**
**No. CT-004932-13  James F. Russell, Judge**

_____

### No. W2018-02008-COA-R3-CV
_____

Wife/Appellant appeals the trial court's denial of relief on her post-divorce petition for contempt and breach of contract.  The parties' MDA awarded Wife 50% of Husband/Appellee's FERS Supplement, which was subsequently terminated due to Husband's yearly earned income being in excess of the FERS cap of $15,120.00.  Because the parties' MDA did not preclude Husband from earning income in excess of the cap, and did not include a provision for such occurrence, the trial court properly denied Wife's petition.  Although the trial court *sua sponte* modified child support to award an additional amount equal to the lost FERS Supplement, it did so in error.  Accordingly, we affirm the trial court's grant of Husband's motion to alter or amend the award of additional child support.  Because the MDA allows the prevailing party to recover attorney's fees and expenses, we reverse the trial court's denial of Husband's reasonable fees and expenses, and remand for determination of same, and for entry of judgment thereon.  Reversed in part, affirmed in part, and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed in Part; Affirmed in Part; and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. and CARMA DENNIS MCGEE, J., joined.

Mitchell D. Moskovitz, and Kirkland Bible, Memphis, Tennessee, for the appellant, Kelly Colvard Parsons.

Larry Rice, Memphis, Tennessee, for the appellee, Richard Jearl Parsons.

**OPINION**

**I. Background**

The procedural history in this case is protracted, and this is the second appeal to this Court. In the interests of judicial economy and consistency, we restate the relevant background information from ***Parsons v. Parsons***, No. W2016-01238-COA-R3-CV, 2017 WL 1192111 (Tenn. Ct. App. Mar. 30, 2017) ("***Parsons I***"):

On July 10, 2014, Appellant Kelly Parsons, and Appellee Richard Parson[s] filed a marital dissolution agreement (MDA) that was incorporated into a final decree of divorce, which was entered by the [Shelby County Circuit Court ("trial court")] on July 16, 2014. During the parties' marriage, Mr. Parsons was employed by the Federal Aviation Administration (FAA) as an air-traffic controller. In November 2013, seven months prior to the divorce, Mr. Parsons retired from his job pursuant to an FAA mandate, requiring retirement at the age of 56. Mr. Parsons' retirement benefits included a monthly annuity from the Civil Service Retirement System (CSRS) in the amount of $5,325. Additionally, Mr. Parsons was to receive a monthly supplement from the Federal Employees Retirement System (FERS) in the amount of $1,370 until he turned 62 and became eligible for social security. In order to maintain eligibility and continue receiving the FERS [S]upplement, Mr. Parsons' earnings could not exceed $15,120[.00] per year.

The terms of the parties' MDA provided that Ms. Parsons would receive 50% of Mr. Parsons' . . . FERS [S]upplement, to wit:

\*\*\*

Wife is entitled to fifty percent (50%) of Husband['s] FERS Supplement under the Civil Service Retirement System. The United States Office of Personnel Management is directed to pay Wife's share directly to Wife. Wife shall be treated as the surviving spouse to the extent necessary to ensure Wife's receipt of her portion of the pension and FERS benefits in the event of Husband's death. Wife will receive a proportionate share of any cost of living increases made by the annuity and/or FERS [S]upplement.

\*\*\*

In April 2015, pursuant to the parties' parenting plan, Ms. Parsons

- 2 -

received Mr. Parsons' 2014 tax return and discovered that in addition to the federal retirement benefits contemplated in the MDA, Mr. Parsons had earned income in excess of $52,000, which exceeded the FERS cap of $15,120[.00]. Thus, Mr. Parsons was not eligible for the FERS [S]upplement of $1,370 per month.

On June 22, 2015, Ms. Parsons filed a petition for civil and criminal contempt. In her petition, she alleged that Mr. Parsons should be held in willful civil and criminal contempt for failing and refusing to pay her the 50% share of his FERS [S]upplement. Ms. Parsons also alleged, inter alia, that Mr. Parsons owed an arrearage of $4,795 for unpaid FERS benefits. The petition requested that the trial court order Mr. Parsons to pay such arrearages . . . .

On July 27, 2015, Mr. Parsons' attorney sent a letter informing Ms. Parsons that Mr. Parsons' FERS [S]upplement had been reduced to zero beginning August 2015. The letter also indicated that "because fifty percent (50%) of Zero Dollars ($0.00) is Zero Dollars ($0.00), [Ms. Parsons] will not receive a FERS [S]upplement payment beginning August 1, 2015." [Fn. 1. While the FERS [S]upplement ended in July 2015, Ms. Parsons alleges in her petition that Mr. Parsons did not pay her the 50% share of the [S]upplement for the months of December 2014 through June 2015 (the month the petition was filed), even though he was receiving the full FERS [S]upplement directly from the Office of Personnel Management.]. A letter from the Office of Personnel Management indicated that the reason for the elimination of the FERS [S]upplement is because Mr. Parsons' earned income during 2014 exceeded the $15,120[.00] income cap. Ms. Parsons argues that her interest in Mr. Parsons' retirement benefits is a property interest, and as such, is non-modifiable. Ms. Parsons also argues that the entry of the final decree of divorce gave her a vested interest in one-half of Mr. Parsons' FERS [S]upplement, and that Mr. Parsons' failure to compensate her to the extent of her vested interest was an improper unilateral modification of the final decree of divorce. Mr. Parsons argues that Ms. Parsons knew prior to the entry of the MDA and the final decree of divorce that Mr. Parsons' income would exceed the $15,120[.00] cap. Specifically, Mr. Parsons produced a letter from his new employer, Raytheon, dated April 7, 2014 stating that his hourly rate would be $26.50 and that he could not exceed more than 1500 hours per year. However, we note that Mr. Parsons signed the permanent parenting plan on July 10, 2014 swearing and affirming that his gross monthly income was only $4,597.00 per month, which included his federal retirement benefits and his expected earnings from Raytheon.

- 3 -

The hearing on the contempt petition was held on March 2, 2016. After Ms. Parsons' attorney completed direct examination of Ms. Parsons, Mr. Parsons' attorney made an oral motion to dismiss . . . on the ground that Ms. Parsons failed to elect whether she was seeking civil or criminal contempt. Prior to ruling on the motion, the trial court heard statements from counsel for both parties regarding the status of the proof. The attorneys were in agreement that Ms. Parsons had not completed her proof; however, Mr. Parsons argued that the case was fundamentally flawed because it had proceeded without Ms. Parsons electing whether she was proceeding on either civil or criminal contempt. Mr. Parsons argued that the only remedy was dismissal. In order to expedite the proceeding, Ms. Parsons agreed to dismiss the criminal contempt component and proceed solely on the allegations of civil contempt. Despite statements from both attorneys that Appellant had not closed her proof, the trial court granted the motion to dismiss. . . .

*Parsons*, 2017 WL 1192111, at *1-2 (footnote in original). In ***Parsons I***, we determined that the trial court applied an incorrect burden of proof and improper procedure; as such, we vacated the trial court's order and remanded the case for further proceedings.

On remand from ***Parsons I***, Ms. Parsons filed an amended petition for contempt on June 23, 2017. In addition to contempt, Ms. Parsons amended her petition to add, in the alternative, a breach of contract claim. Specifically, Ms. Parsons alleged that Mr. Parsons breached the MDA because he failed to pay her 50% of his FERS Supplement from December 2014 through the date of her amended petition. On September 12 and 13, 2017, the trial court heard Ms. Parsons' amended petition. On November 29, 2017, the trial court announced its ruling.[1] In pertinent part, the trial court held that: (1) there was no contempt because Ms. Parsons did not have a vested interest in the FERS Supplement; and (2) there was no order requiring Mr. Parsons to compensate Ms. Parsons should the FERS Supplement terminate. The trial court also denied Ms. Parsons' breach of contract claim on its finding that the MDA was a valid contract, which could not be altered "even under equitable interpretations." Nonetheless, the trial court ostensibly restored Ms. Parsons' share of the FERS Supplement by awarding an upward deviation in child support equal to $685 per month, which amount is equal to 50% of Mr. Parsons' previous FERS Supplement.

On December 20, 2017, Mr. Parsons filed a motion to alter or amend, wherein he sought reversal of the portion of the trial court's order awarding an upward deviation in child support. On August 31, 2018, the trial court heard Mr. Parsons' motion. By order

---

[1] The trial court incorporated its oral ruling into its written Order Dismissing Amended Petition for Civil and Criminal Contempt and in the Alternative for Breach of Contract, which was filed on June 6, 2018.

of October 18, 2018, the trial court granted the motion and reversed its prior ruling. Specifically, the trial court found that its award of $685 per month "was an erroneous upward deviation in child support." Ms. Parsons appeals.

## II. Issues

Ms. Parsons raises three issues for review, which we restate as follows:

1. Whether the trial court erred in finding that Mr. Parsons was not required to compensate Ms. Parsons for her share of the FERS Supplement after it terminated.

2. Whether the trial court erred in reversing the upward deviation in child support.

3. Whether the trial court erred in denying Ms. Parsons her attorney's fees and expenses under the MDA.

In the posture of Appellee, Mr. Parsons asserts that the trial court erred in denying his attorney's fees and expenses under the MDA.

## III. Standard of Review

This case was tried without a jury. Therefore, we review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. Ct. App. 2008).

## IV. FERS Benefit

Before addressing the parties' respective arguments, it is helpful to discuss the general nature of the federal FERS supplemental benefits. FERS, the Federal Employee Retirement System, is a retirement plan for Federal civilian employees. *FERS Information*, UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, https://www.opm.gov/retirement-services/fers-information/ (last visited October 31, 2019). The FERS retirement package includes benefits from three sources: (1) Social Security; (2) the Thrift Savings Plan; and (3) the Federal Employees Retirement Basic Benefit ("FERS basic benefit"). *Information for FERS Annuitants*, UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, 1 (May 2012), https://www.opm.gov/retirement-services/publications-forms/pamphlets/ri90-8.pdf. Within the FERS basic benefit plan, which the Office of Personnel Management ("OPM") administers, is a special retirement supplement that is available to select employees. The special retirement supplement was "designed to bridge the gap between when [a qualified employee] retire[s] and age 62 when [the employee] first becomes eligible for a Social Security benefit." Reg Jones,

*Understanding the Special Retirement Supplement 2019*, FEDERAL TIMES (May 28, 2019), https://www.federaltimes.com/fedlife/retirement/2019/05/28/understanding-the-special-retirement-supplement-2019/. Air traffic controllers are eligible for the special retirement supplement because air traffic controllers must retire at age 56. Tammy Flanagan, *The FERS Supplement: Q & A*, GOVERNMENT EXECUTIVE (May 16, 2019), https://www.govexec.com/pay-benefits/2019/05/fers-supplement-q/157077/. The supplement is administered by OPM's Civil Service Retirement and Disability Fund, not through the Social Security Office. Reg Jones, *Understanding the Special Retirement Supplement 2019*, FEDERAL TIMES (May 28, 2019), https://www.federaltimes.com/fedlife/retirement/2019/05/28/understanding-the-special-retirement-supplement-2019/. However, similar to Social Security, the special retirement supplement is subject to an earnings test. *Information for FERS Annuitants*, UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, 12 (May 2012), https://www.opm.gov/retirement-services/publications-forms/pamphlets/ri90-8.pdf. A qualified employee cannot earn more than the exempt amount of earnings, or risk having his or her special retirement supplement reduced by $1.00 for every $2.00 of earnings over the exempt amount. *Information for FERS Annuitants*, UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, 12 (May 2012), https://www.opm.gov/retirement-services/publications-forms/pamphlets/ri90-8.pdf. Therefore, it is possible that a qualified employee could have his or her retirement supplement reduced to $0 if he or she earns income over the minimum level of earnings. *Information for FERS Annuitants*, UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, 12 (May 2012), https://www.opm.gov/retirement-services/publications-forms/pamphlets/ri90-8.pdf. For earnings during 2014, the year Mr. Parsons began working for Raytheon, the exempt amount of earnings was $15,120.00.

From the foregoing discussion, it is clear that Mr. Parsons' FERS Supplement is a specialized retirement asset. Tennessee Code Annotated section 36-4-121(b)(1)(B)(ii) provides that it is also "marital property." Tenn. Code Ann. § 36-4-121(b)(1)(B)(ii) ("'Marital property' includes . . . retirement[] and other fringe benefit rights accrued as a result of employment during the marriage[.]"). Here, the trial court divided the parties' marital property, including the FERS Supplement, according to their MDA.

In Tennessee, MDAs are treated as contracts and are subject to the rules governing construction of contracts. *See* **Barnes v. Barnes**, 193 S.W.3d 495, 498 (Tenn. 2006); **Honeycutt v. Honeycutt**, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003). To the extent our analysis requires interpretation or application of the parties' MDA, we note that "interpretation of a contract is a matter of law, [and] our review is *de novo* on the record with no presumption of correctness. . . ." **Honeycutt**, 152 S.W.3d at 561 (quoting **Witham v. Witham**, No. W2000-00732-COA-R3-CV, 2001 WL 846067, at *3 (Tenn. Ct. App. July 24, 2001)). In **Kafozi v. Windward Cove, LLC**, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Jan. 30, 2006), this Court explained that

- 6 -

[i]n resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. ***Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.***, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." ***Planters Gin Co.***, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); ***Doe v. HCA Health Servs. of Tenn., Inc.***, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. ***Planters Gin Co.***, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." ***Id.*** (quoting 17 Am. Jur. 2d, *Contracts*, § 245).

This Court's initial task in construing the [c]ontract at issue is to determine whether the language of the contract is ambiguous. ***Planters Gin Co.***, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. ***Id.*** A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. ***Id.*** (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. ***Id.*** Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. ***Id.***

*Kafozi*, 184 S.W.3d at 698-99.

Turning to the parties' respective arguments, Ms. Parsons maintains that Mr. Parsons "unilaterally and impermissibly" modified the parties' MDA when he failed to compensate her for her share of the FERS Supplement after the benefit terminated. The MDA provides, in relevant part that

[the MDA] contains the entire understanding and agreement between the parties. There are no representations, warranties, covenants, or undertakings other than those expressly set forth herein, and each party enters into this contract voluntarily, advisedly, and **with full knowledge of the financial condition, nature, character, and value of both parties'**

**separate and marital property**, estate, and income. The law of the state of Tennessee shall govern this Agreement in all respects.

(emphasis added). The trial court found that "the contract embedded in the *Marital Dissolution Agreement* [was] executed by the parties with clear and open minds." Ms. Parsons does not dispute that she entered into the MDA voluntarily, nor does she allege contract formation errors that would prevent enforcement of the MDA. More importantly, however, it is undisputed that, at the time they entered into the MDA, both parties had full knowledge of the character of the FERS Supplement. Specifically, Ms. Parsons testified that she was aware that the Supplement could terminate should Mr. Parsons earn more than $15,120.00. Likewise, when questioned at oral argument before this Court, Ms. Parsons' counsel stated, in relevant part:

> Q: At the time the MDA was agreed to, wasn't it understood that he could lose the FERS payment either by reaching a certain age or if his income exceeded a certain amount?
>
> A: Yes.
>
> Q: That was understood?
>
> A: Yes.
>
> Q: Yet, the MDA includes no provision in the event that that happens.
>
> A: That's correct.

Indeed, the clause in the MDA concerning the FERS Supplement states only that

> Wife is entitled to fifty percent (50%) of Husband['s] FERS Supplement under the Civil Service Retirement System. The United States Office of Personnel Management is directed to pay Wife's share directly to Wife. Wife shall be treated as the surviving spouse to the extent necessary to ensure Wife's receipt of her portion of the pension and FERS benefits in the event of Husband's death. Wife will receive a proportionate share of any cost of living increases made by the annuity and/or FERS [S]upplement.

Although the MDA clearly and unambiguously provides that Ms. Parsons is entitled to 50% of the FERS Supplement, the MDA is silent concerning Mr. Parsons' obligation should the FERS Supplement terminate. Furthermore, there is no language in the MDA that precludes Mr. Parsons from seeking employment or earning more than the exempt amount of earnings. Despite her knowledge that the FERS Supplement could terminate if

Mr. Parsons' earnings exceeded the exempt amount of earnings, the parties did not include any contractual terms to insure Ms. Parsons against such contingency. As stated by the trial court in its ruling (incorporated into its final order):

> the parties very easily could have included a contingency clause that would have required [Mr. Parsons] to make up the difference of the loss to [Ms. Parsons] in the event her portion of the FERS Supplement should be terminated.

> This, the parties did not do. Under the circumstances, the terms of the Marital Dissolution Agreement as incorporated in the Final Decree are clear. There is no requirement that [Mr. Parsons] make up the difference lost by [Ms. Parsons] in terms of the FERS Supplement benefit.

We agree. The language in the MDA is clear and unambiguous, and this Court gives effect to the language as expressed in the contract, and nothing more. *See Kafozi*, 184 S.W.3d at 698-99. Furthermore, we will neither modify a contract, nor impose obligations or rights on the parties, for which they have not bargained. *See Petty v. Sloan*, 277 S.W.2d 355, 359 (Tenn. 1955) (quoting *Smithart v. John Hancock Mutual Life Ins. Co.*, 71 S.W.2d 1059, 1063 (Tenn. 1934)) ("'A court is not at liberty to make a new contract for parties who have spoken for themselves.'"); *Marshall v. Jackson & Jones Oils, Inc.*, 20 S.W.3d 678, 682 (Tenn. Ct. App. 1999) (citing *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 553 (Tenn. Ct. App.1991)) (stating that courts "may not relieve parties of the contractual obligations simply because these obligations later prove to be burdensome or unwise."); s*ee also Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017) ("Indeed, one of the bedrocks of Tennessee law is that our courts are without power to make another and different contract from the one executed by the parties themselves."). Again, in this case, there is nothing in the MDA to preclude Mr. Parsons from action that might terminate the FERS Supplement. Neither is there any provision in the MDA to obligate Mr. Parsons to continue to compensate Ms. Parsons for 50% of the FERS Supplement should his actions result in its termination.

Nonetheless, Ms. Parsons insists that she has a vested, non-modifiable interest in a share of the FERS Supplement. In support of her argument, Ms. Parsons relies on the Tennessee Supreme Court case, *Johnson v. Johnson*, 37 S.W.3d 892 (Tenn. 2001), wherein the Court held

> that when [a] MDA divides **military retirement benefits**, the non-military spouse has a vested interest in his or her portion of those benefits as of the date of the court's decree. That vested interest cannot thereafter be unilaterally diminished by an act of the military spouse. Such an act constitutes an impermissible modification of a division of marital property and a violation of the court decree incorporating the MDA.

- 9 -

*Id.* at 897-98 (emphasis added).

Conversely, Mr. Parsons argues that the Tennessee Supreme Court's holding in *Johnson* was abrogated by the United States Supreme Court in *Howell v. Howell*, 137 S. Ct. 1400 (2017). In *Howell*, the United States Supreme Court held that a state court cannot

> increase, pro rata, the amount the divorced spouse receives each month from the **veteran's retirement pay** in order to indemnify the divorced spouse for the loss caused by the veteran's waiver [of retirement pay to receive service-related disability benefits], [*id.* at 1402, because] [s]tate courts cannot "vest" that which (under governing federal law) they lack the authority to give.

*Id.* at 1405 (emphasis added). In addressing the parties' arguments, the trial court held:

> 7. This Court finds that Ms. Parsons did not acquire a "vested interest" in Mr. Parsons' FERS Supplement Benefit, which ceased to exist under the applicable federal regulations.
>
> 8. Under the doctrine of Federal Preemption, this Court cannot "vest" that which it lacks the authority to give, even under equitable considerations.

In the first instance, the benefits at issue in *Johnson* and *Howell* are readily distinguishable from the FERS Supplement at issue here. *Johnson* and *Howell* concern military retirement benefits, which are not in the nature of a FERS Supplement, *see* discussion *supra*. Here, the parties' respective interests in the FERS Supplement are contractual because this property was divided in the MDA. As discussed above, there is nothing in the MDA to protect Ms. Parsons' interest in the FERS Supplement should Mr. Parsons' actions lead to termination of same, and there is nothing in the MDA to preclude Mr. Parsons from earning above the exempt amount of earnings. Therefore, Ms. Parsons was not contractually entitled to compensation for her 50% of the FERS Supplement after it terminated.[2]

---

[2] Ms. Parsons also argues that Mr. Parsons is guilty of breaching his implied duty of good faith and fair dealing regarding the MDA. "When considering whether the parties have complied with this duty of good faith and fair dealing, the court must ascertain the intention of the parties as determined by a reasonable and fair construction of the language of the contract." *Woods v. Woods*, No. W1999-00733-COA-R3-CV, 2000 WL 34411144, at *3 (Tenn. Ct. App. Aug. 22, 2000). As discussed, *supra*, the parties intended to enter into the MDA as written. The undisputed facts demonstrate that Mr. Parsons complied with his duty of good faith and fair dealing when he disclosed to Ms. Parsons that the FERS Supplement could terminate. Specifically, Ms. Parsons testified that she was aware that the Supplement could terminate should Mr. Parsons earn more than $15,120.00. As such, we cannot now conclude that

## V. Child Support

Concerning child support, in its June 6, 2018 order, the trial court held:

17. This [c]ourt is of the considered opinion that the loss of the FERS Supplement Benefit is a material and significant change in circumstances such that the child support order should be modified upward in addition to the recalculation that is already now in place.

\*\*\*

19. This [c]ourt has reached the conclusion that the loss of the FERS Supplement Benefit must be restored to Ms. Parsons, in the form of an upward deviation in the now modified child support order, that is equal to the Six Hundred Eighty Five Dollars ($685) each month that Ms. Parsons would be otherwise receiving. . . .

Mr. Parsons filed a motion to alter or amend the trial court's order, asking the trial court to reverse the portion of its order requiring him to pay an additional $685 per month in child support. By order of October 18, 2018, the trial court reversed its prior ruling finding that the $685 per month "was an erroneous upward deviation in child support." Ms. Parsons now asks this Court to reverse the trial court and reinstate the additional $685 in monthly child support payments. We decline to do so.

The trial court was correct to reverse its prior ruling on the issue of child support. Based on the pleadings, the issue of modification of child support was not properly before the trial court. As noted above, Ms. Parsons' petition was for contempt and breach of contract. At no point in the petition does she ask the trial court to revisit the previous child support order. "The purpose of an action can only be determined from the pleadings," and "[a] trial court has no authority, *sua sponte*, to modify its child support decrees." *Long v. Long*, No. 01A01-9406-CV-00270, 1995 WL 33741, at \*3 (Tenn. Ct. App. Jan. 27, 1995)

Furthermore, at the time it entered the order increasing child support by $685 per month, the trial court had already granted modification of child support based on the termination of the FERS Supplement. On August 27, 2015, Ms. Parsons filed a petition to modify child support alleging, in pertinent part, that her income was reduced by $685 per month because she no longer received half of the FERS Supplement. Based on her

he breached this duty because Ms. Parsons chose to enter into the MDA without any provision protecting her should the FERS Supplement terminate.

income reduction, Ms. Parsons asked the trial court to modify Mr. Parsons' child support obligation. On April 6, 2016, the trial court entered an order granting Ms. Parsons' petition to modify child support, wherein it increased Mr. Parsons' child support obligation from zero dollars to five hundred and forty-three dollars ($543.00) based on the material change in circumstances, i.e. Ms. Parsons' decreased income. The trial court also ordered Mr. Parsons to pay two thousand six hundred and ninety-eight dollars ($2,698.00) in child support arrearages. Neither party appealed the April 6, 2016 order. As such, the order increasing Mr. Parsons' child support was "*res judicata* as to all circumstances in existence at the time of the entry of said [order]." *Watts v. Watts*, No. 01-A01-9011CH00406, 1991 WL 93780, at *2 (Tenn. Ct. App. June 5, 1991) (citing *Hicks v. Hicks*, 176 S.W.2d 371, 375-76 (Tenn. Ct. App. 1943)). The facts surrounding termination of the FERS Supplement were in existence and under consideration at the time the trial court entered the April 6, 2016 order. Under the doctrine of *res judicata*, the trial court could not revisit child support **on the same facts** in the absence of a Rule 60 motion. If Ms. Parsons should request modification of child support based on a material change in circumstances arising from facts **not** in existence at the time of April 6, 2016, she would have to file a petition specifically to that end. *See Watts v. Watts*, No. 01-A01-9011CH00406, 1991 WL 93780, at *2 (Tenn. Ct. App. June 5, 1991) (citing *Jones v. Jones*, 659 S.W.2d 23, 24 (Tenn. Ct. App. 1983) ("In order to obtain an increase in child support [after a final order], the petitioner has the burden of showing there has been a material change of circumstances justifying an increase in child support, and that the change has taken place from and after the entry of the previous [order].")). No such petition was filed in this case. Accordingly, the trial court erred in *sua sponte* granting an upward deviation in child support. However, it corrected this error in granting Mr. Parsons' motion to alter or amend, and we affirm the grant of that motion.

## VI. Attorney's Fees

Under the MDA, both parties sought attorney's fees at trial and now seek their respective fees and expenses at the appellate level. In *Eberbach*, the Tennessee Supreme Court explained that parties may contract for attorney's fees in a MDA, to-wit:

> A [MDA] is a contract entered into by a husband and wife in contemplation of divorce. *See Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006) (citing *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001); *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003)). As a contract, a MDA generally is subject to the rules governing construction of contracts. *Id.* . . . Thus, a MDA may include enforceable contractual provisions regarding an award of attorney's fees in post-divorce legal proceedings.

*Eberbach*, 535 S.W.3d at 474-75. Concerning an award of attorney's fees, the parties' MDA provides:

- 12 -

## Noncompliance

Should either party incur any expense or legal fees in a successful effort to enforce or defend this Marital Dissolution Agreement, in whole or in part, the Court **SHALL** award reasonable attorney fees and suit expenses to the party seeking to enforce this Agreement. No breach, waiver, failure to seek strict compliance, or default of any of the terms of this Agreement shall constitute a waiver of any subsequent breach or default of any of the terms of this Agreement.

(emphasis in original). The trial court denied the parties' respective requests for attorney's fees stating that neither party was the "prevailing party," and that there were no "winners [or] losers in this case." We disagree. Here, the trial court denied Ms. Parsons' petition for contempt and breach of contract concerning the FERS Supplement. Although Ms. Parsons was initially awarded an increase in child support in the amount of 50% of the FERS Supplement, on grant of Mr. Parsons' motion to alter or amend, the trial court correctly reversed its modification of child support. Accordingly, Mr. Parsons was definitively the prevailing party at trial. Likewise, Mr. Parsons is the prevailing party on appeal. As such, under the plain language of the MDA, he is entitled to his reasonable attorney's fees and expenses at both the trial level and on appeal. Therefore, we remand the case for determination of Mr. Parsons' reasonable attorney's fees and costs and for entry of judgment in his favor on same.

## VII. Conclusion

For the foregoing reasons, we reverse the trial court's order denying Mr. Parsons' attorney's fees under the MDA. The trial court's judgment is otherwise affirmed. The case is remanded for determination of Mr. Parsons' reasonable trial and appellate attorney's fees and expenses, for entry of judgment on same, and for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed to the Appellant Kelly Colvard Parsons, for all of which execution may issue if necessary.

_____

KENNY ARMSTRONG, JUDGE