# United States Court of Appeals
# for the Federal Circuit

---

**JOHN J. BATCHER,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2019-2116

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-638, Chief Judge Margaret C. Bartley, Judge William S. Greenberg, Judge Joseph L. Toth.

---

Decided: September 11, 2020

---

KATHERINE A. HELM, Dechert LLP, New York, NY, argued for claimant-appellant. Also argued by LUKE REILLY, Philadelphia, PA.

JOSHUA E. KURLAND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by ETHAN P. DAVIS, CLAUDIA BURKE, ROBERT EDWARD KIRSCHMAN, JR.; MEGHAN ALPHONSO, Y. KEN LEE,

Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before DYK, CLEVENGER, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

This case is about apportionment of a veteran's disability compensation benefits. The veteran, John J. Batcher, appeals a decision of the U.S. Court of Appeals for Veterans Claims upholding the Board of Veterans' Appeals' grant of such apportionment to his now ex-wife, Roberta Batcher, under 38 U.S.C. § 5307 and its implementing regulations. Mr. Batcher contends that by affirming this apportionment, the Veterans Court decision improperly superseded a preexisting state-court-sanctioned separation agreement absolving Mr. Batcher of all spousal maintenance obligations. Because Mr. Batcher's preclusion, preemption, and statutory construction arguments lack merit, we affirm.

I

A

Section 5307 of title 38 entitles certain dependents of veterans to "apportionment" of any compensation the veteran is receiving from the Department of Veterans Affairs (VA). 38 U.S.C. § 5307. With apportionment, the dependent(s) directly receive a portion of the veteran's compensation, which would otherwise go entirely to the veteran. As relevant here, § 5307 permits the VA Secretary to prescribe regulations for apportioning benefits "if the veteran is not living with the veteran's spouse." *Id.* § 5307(a)(2). As authorized, VA has prescribed two types of apportionment: general apportionment and special apportionment. 38 C.F.R. §§ 3.450, 3.451. General apportionment is available "[i]f the veteran is not residing with his or her spouse . . . and the veteran is not reasonably discharging his or her responsibility for the spouse's . . .

support."  38 C.F.R. § 3.450(a)(1)(ii).  Special apportion-ment, on the other hand, turns not on the veteran's degree of support but on the dependent's showing of hardship. "[W]here hardship is shown to exist," compensation may be "specially apportioned . . . on the basis of the facts in the individual case as long as it does not cause undue hardship to the other persons in interest."  *Id.* § 3.451.  This appeal stems from the Board granting Ms. Batcher entitlement to special apportionment of Mr. Batcher's VA disability com-pensation benefits for the period when the two were still married but living separately.

## B

### 1

Mr. Batcher served on active duty in the U.S. Army in the 1960s.  In 1972, Mr. and Ms. Batcher married.  Almost thirty years later, in 2001, they separated.  In 2002, Mr. Batcher brought a Divorce Action in the Supreme Court of New York, Suffolk County (hereinafter "New York court"), which he later converted to a Separation Action.  In March 2005, the New York court issued a Judgment of Sep-aration ordering various stipulated terms, including that Mr. Batcher would pay Ms. Batcher $300 per month in spousal maintenance.

In September 2006, VA first granted Mr. Batcher ser-vice connection for various disabilities for which he began receiving monthly disability compensation.  The following month, prompted in part by a contempt motion Ms. Batcher filed, the New York court held a hearing where both parties appeared with counsel.  The court noted that the parties had reached a proposed settlement, which Ms. Batcher's counsel proceeded to read into the record (hereinafter "the 2006 Stipulation").  As relevant, the 2006 Stipulation read:

> In settlement of the motions pending before the Court the parties stipulate and agree as follows:

> On or before but in no case later than December 6, 2006 [Mr. Batcher] shall pay to [Ms. Batcher] the sum of $7,000 . . . .

> In consideration therefore, all maintenance and health insurance and obligations owing from the plaintiff [Mr. Batcher] to [Ms. Batcher] shall cease.

J.A. 489.  The New York court asked whether the $7,000 payment "would resolve the past maintenance, which is due and owing and future maintenance."  J.A. 490. Ms. Batcher's counsel confirmed this was correct, and the parties also confirmed that the 2006 Stipulation would modify the 2005 Judgment of Separation, "resolv[ing] the issues with respect to maintenance."  J.A. 492.  After Mr. and Ms. Batcher's allocutions, the New York court "so-ordered" the 2006 Stipulation.  Shortly thereafter, Mr. Batcher paid Ms. Batcher the agreed-to $7,000.

Several years later, in December 2010, following Mr. Batcher's relocation, a Pennsylvania state court issued a Divorce Decree formally divorcing the Batchers.

2

Meanwhile, in April 2008, Ms. Batcher had filed a VA claim for apportionment of Mr. Batcher's disability compensation benefits.  VA notified Mr. Batcher and requested his financial information in order to assess whether apportionment would cause him undue hardship.  Mr. Batcher responded, objecting to apportionment solely on the grounds that the 2006 Stipulation "precluded [Ms. Batcher] from making any and all future claims for maintenance or support against [him]."  J.A. 580.

In August 2009, the VA regional office denied Ms. Batcher's claim for apportionment—despite her demonstrated financial need—based on the 2006 Stipulation.  The regional office reasoned that by entering the 2006 Stipulation, Ms. Batcher had "voluntarily renounced any

maintenance or support from [Mr. Batcher] including future claims." J.A. 555, 558. Ms. Batcher filed a Notice of Disagreement. The regional office maintained its denial of apportionment in June 2010, stating again that the 2006 Stipulation and $7,000 payment resolved all past and future maintenance obligations. Ms. Batcher then appealed to the Board of Veterans' Appeals.

In December 2015, after first remanding for the regional office to comply with certain procedural requirements, the Board granted Ms. Batcher special apportionment from the date of her claim until the date of her divorce—that is, from April 2008 to December 2010. The Board recounted the various state court proceedings and found that there was "inadequate objective evidence" to determine whether Mr. Batcher was reasonably discharging his support responsibility during the claim period for purposes of general apportionment under 38 C.F.R. § 3.450. J.A. 26–28. But the Board found that the evidence did support special apportionment under 38 C.F.R. § 3.451 because Ms. Batcher had shown a hardship—with expenses exceeding her income and reported periods of homelessness—and Mr. Batcher had not shown any hardship of his own, having failed to provide any financial information when he had the opportunity. With these criteria met, the Board granted Ms. Batcher entitlement to special apportionment of Mr. Batcher's disability compensation for the period up to the couple's divorce. Mr. Batcher appealed that decision to the Veterans Court.[1]

---

[1]    Because the allowance of Ms. Batcher's claim would result in a decreased benefit to Mr. Batcher, Mr. Batcher was able to appeal this "simultaneously contested claim." *See* J.A. 25; *see also* 38 C.F.R. §§ 20.3(*l*) (definition), 19.100–19.102 (notice of appeal rights). Ms. Batcher was notified of the appeal but did not move to

A divided panel of the Veterans Court affirmed the Board's decision to grant apportionment. *Batcher v. Wilkie*, 31 Vet. App. 138 (2019). Mr. Batcher argued only that Ms. Batcher had waived her right to seek apportionment by entering the New York court-ordered 2006 Stipulation and accepting the $7,000 lump sum payment in lieu of future maintenance payments. *Id.* at 144. The panel majority disagreed, holding that "a domestic relations separation agreement sanctioned by a state court . . . plays no role in VA's determination of entitlement to special apportionment." *Id.* at 140. "To the extent that such an agreement purports to preclude a veteran's spouse from seeking apportionment of a veteran's VA benefits, the veteran's remedy to make himself or herself whole lies with the state court." *Id.* The Veterans Court reasoned that "[w]hether Ms. Batcher contracted away her right to file a claim for special apportionment in exchange for adequate consideration from Mr. Batcher . . . is a matter of contract law best decided by a state court." *Id.* at 144. Thus, Mr. Batcher's remedy lay in state court where he could sue for breach of contract or seek modification of the separation agreement—not with VA. *Id.* at 145.

Dissenting Judge Greenberg would have held that Ms. Batcher was not entitled to apportionment because she became Mr. Batcher's ex-spouse before the Board decided the claim, and the apportionment statute does not apply to ex-spouses. *Id.* at 146. Further, he felt that Ms. Batcher should not have been permitted to obtain a "modification of a properly entered state sanctioned contract . . . by the misuse of a VA order." *Id.* at 147.

---

intervene at the Veterans Court. *Batcher v. Wilkie*, 31 Vet. App. 138, 142 n.5 (2019).

The Veterans Court entered judgment against Mr. Batcher on May 20, 2019. Mr. Batcher timely appealed to this court. We have jurisdiction under 38 U.S.C. § 7292.

## II

"Our jurisdiction to review Veterans Court decisions is limited by statute." *Sullivan v. McDonald*, 815 F.3d 786, 788 (Fed. Cir. 2016). We review de novo the Veterans Court's interpretation of statutes and constitutional provisions. *Wanner v. Principi*, 370 F.3d 1124, 1128 (Fed. Cir. 2004). And we "may set aside any regulation or interpretation thereof if we find it: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (4) without observance of procedure required by law." *Sullivan*, 815 F.3d at 789 (citing 38 U.S.C. § 7292(d)(1)).

We agree with the Veterans Court's framing of the central issue as "whether and to what extent a separation agreement sanctioned by a state court during divorce proceedings affects a spouse's entitlement to special apportionment of a veteran's VA benefits." *Batcher*, 31 Vet. App. at 140. And we also agree with its answer: not at all.[2] *Id.* Mr. Batcher's three challenges to that conclusion are unavailing.

## A

Mr. Batcher first argues that the Veterans Court's "refusal to consider [the 2006 Stipulation] to forego apportionment of [his] benefits is barred by res judicata."

---

[2]    We have no occasion to consider whether an express waiver by the beneficiary of the right to special apportionment could be or must be enforced by VA as a matter of federal law.

Appellant's Br. 12 (capitalization altered to sentence case). Mr. Batcher clarifies in his reply brief that in fact he is asserting a more general argument that the Veterans Court "ignored the preclusive effect" of the 2006 Stipulation. Reply Br. 15 n.6. The gist of Mr. Batcher's preclusion argument is that Ms. Batcher should have been denied special apportionment because of the 2006 Stipulation. This argument, lacking foundation in any particular preclusion doctrine, falls flat.

First, contrary to Mr. Batcher's repeated assertions, the Veterans Court did not "refuse[] to consider" the 2006 Stipulation. Appellant's Br. 12, 13, 19. It explicitly identified Mr. Batcher's argument as centering on the Board's purported error in failing to consider the effect of the 2006 Stipulation. *Batcher*, 31 Vet. App. at 142. The Veterans Court simply (and correctly, we hold) rejected his argument that Ms. Batcher waived her right to seek apportionment when she entered the 2006 Stipulation.

The 2006 Stipulation does not warrant the preclusive effect Mr. Batcher would give it primarily because that state-court-ordered stipulation did not extinguish Ms. Batcher's independent right to claim apportionment of federal benefits to which she was entitled, i.e., a portion of Mr. Batcher's VA disability compensation. By its terms, the 2006 Stipulation refers only to releasing "all maintenance . . . and obligations owing *from the plaintiff* [Mr. Batcher] to [Ms. Batcher]." J.A. 489 (emphasis added). Apportioned VA benefits, by definition, cannot be owed from Mr. Batcher. Rather, they are a federal benefit available *from VA* to any qualifying dependent of a veteran. While apportionment was only an option for Ms. Batcher because of her relationship to Mr. Batcher, she was independently entitled to seek this federal benefit from VA. *See Belton v. Principi*, 17 Vet. App. 209, 211 (2003) ("Although arising from a veteran's benefits, an apportionment is an entity legally separate from those benefits. Thus, when veterans' dependents file on their own behalf for an

apportionment, they seek to exercise their right to an apportionment." (internal quotation marks omitted)).

Notably, ever since Mr. Batcher began receiving VA disability compensation benefits, his monthly payments have included an additional amount specifically because he reported having a spouse. *E.g.*, J.A. 140, 669, 719 (specifying that each payment "includes an additional amount for your spouse"); *see* 38 U.S.C. § 1115 (entitling veterans with a sufficient disability rating to additional compensation for dependents). Those benefits were not meant to support Mr. Batcher alone, so it follows that Ms. Batcher should have a federal mechanism by which to claim a portion of those benefits while "not living with" her husband. *See* 38 U.S.C. § 5307(a)(2).

As the Veterans Court concluded, Ms. Batcher satisfied all of the criteria for special apportionment. *Batcher*, 31 Vet. App. at 144. As a veteran's spouse (at the time of her claim) who suffered hardship during the relevant period while living apart from the veteran, and with no evidence that apportionment would unduly harm others, Ms. Batcher was entitled to apportionment. *See* 38 U.S.C. § 5307(a)(2); 38 C.F.R. § 3.451. With this showing, Ms. Batcher was owed a portion of Mr. Batcher's disability compensation from VA. The 2006 Stipulation—to which VA, of course, was not a party—does not change that, notwithstanding the VA regional office's contrary belief.

To the extent that Mr. Batcher believes Ms. Batcher has breached the terms of the 2006 Stipulation, or believes a modification of those terms is now warranted following Ms. Batcher's apportionment, his remedy lies in state court—not in this court, or with VA.[3]

---

[3] We disagree in one respect with the Veterans Court's reasoning related to Mr. Batcher's waiver/preclusion argument. The Veterans Court observed that two

B

Next, Mr. Batcher argues that the Veterans Court's decision impermissibly preempts New York state domestic relations law. This preemption argument fails for reasons similar to those undermining his preclusion argument: this is a federal agency adjudication of a claim for federal benefits, which does not conflict with any state domestic relations law.

All three types of preemption "work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law," and—in most areas other than domestic relations—"therefore the federal law takes precedence and the state law is preempted." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018) (discussing "conflict," "express," and "field" preemption). But, as Mr. Batcher is quick to point out, there is a "presumption against preemption of state laws governing domestic relations."

---

orders entered by the New York court after the 2006 Stipulation "appear to belie" Mr. Batcher's assertion that Ms. Batcher waived her right to seek apportionment. *Batcher*, 31 Vet. App. at 144 n.8. But these orders to release to Ms. Batcher half of Mr. Batcher's retirement funds and half of his military retired pay benefits did not relate to ongoing *maintenance* obligations. The December 2006 retired pay order was expressly "[t]o accommodate the marital property distribution," J.A. 505; and the October 2007 order was a continuation of efforts to execute the retirement funds distribution originally agreed to in the 2005 Judgment of Separation, *see* J.A. 484. Thus, neither sheds light on how the parties or the New York court viewed the 2006 Stipulation's release of maintenance obligations. And our rejection of Mr. Batcher's preclusion argument here does not turn on the existence of these later orders.

*Hillman v. Maretta*, 569 U.S. 483, 490 (2013) (internal quotation marks omitted). And "[b]efore a state law governing domestic relations will be overridden, it must do major damage to clear and substantial federal interests." *Rose v. Rose*, 481 U.S. 619, 625 (1987) (internal quotation marks omitted).

But the anti-preemption principles embodied in this presumption only come into play if the asserted federal and state laws actually conflict. *See, e.g.*, *Murphy*, 138 S. Ct. at 1480 (requiring a state law that "conflict[s] with the federal law"); *Rose*, 481 U.S. at 625 (stating the rule for "when state family law has *come into conflict with* a federal statute" (emphasis added)). In the domestic relations context, this conflict typically manifests as a state law or state court order requiring a certain disposition of a veteran's federal benefits payments. *See generally Howell v. Howell*, 137 S. Ct. 1400 (2017) (reversing a state court order requiring a veteran to reimburse his former spouse for the decrease in military retirement pay caused by the veteran's post-divorce waiver of his retired pay); *Rose*, 481 U.S. 619 (affirming a state court holding a veteran in contempt for failing to pay child support owed under a state law authorizing the award of VA disability benefits as child support).

We see no similar conflict here. In ordering the 2006 Stipulation, the New York court did not address the division of Mr. Batcher's freshly acquired VA disability benefits. Mr. Batcher argues that those benefits must have been contemplated as part of the "maintenance" obligations Ms. Batcher agreed to release, but it is undisputed that the New York court did not expressly order any disposal or division of the VA disability benefits. Without any particular New York state law being invoked as applying to the VA benefits at issue, the only supposed conflict Mr. Batcher has identified is that the Veterans Court's decision allows a federal statute to preempt the "principle of New York state law" that "parties in a separation or divorce proceeding are free to contractually determine the division

of a veteran's disability benefits." Appellant's Br. 25.  Even
assuming preemption can rest on a conflict with such a
nebulous "principle" of state law, the Supreme Court has
already rejected the idea that separating couples contract-
ing in this area can rely on a fixed amount of future VA
benefits.  *See Howell*, 137 S. Ct. at 1405 ("State courts can-
not 'vest' that which (under governing federal law) they
lack the authority to give."); *id.* at 1406 (holding state court
order preempted but noting that "a family court, when it
first determines the value of a family's assets, remains free
to take account of the contingency that some [federal bene-
fits] might be waived, or . . . take account of reductions in
value when it calculates or recalculates the need for
spousal support").  Given the ever-present possibility that
the parties' federal benefits might shift, we fail to see how
the Veterans Court's decision here impairs the parties'
ability to contract.

C

Finally, Mr. Batcher argues that the Veterans Court
erroneously applied 38 U.S.C. § 5307 and its implementing
regulations to apportion benefits to Ms. Batcher, who he
says was no longer his "spouse" at the time she filed her
apportionment claim, because by then the two were legally
separated.  *See id.* § 5307(a)(2) (permitting apportionment
"if the veteran is not living with the veteran's spouse").  To
the extent this argument has been preserved,[4] we reject it
as well.

---

[4]  Mr. Batcher never seems to have challenged
whether Ms. Batcher, as a factual matter, met the statu-
tory and regulatory criteria for seeking apportionment—
including that she was his spouse.  *See* J.A. 580, 596 (re-
sponding to notice of request for apportionment); *Batcher*,
31 Vet. App. at 144 (noting that "Mr. Batcher does not
challenge any of the Board's specific findings regarding

Mr. Batcher presents no authority, and we know of none, to support his position that the Batchers' legal separation under the 2005 Judgment of Separation "turned Ms. Batcher from a 'spouse' into a 'former spouse.'" Appellant's Br. 27. Title 38 defines "spouse" as "a person of the opposite sex who is a wife or husband." 38 U.S.C. § 101(31).[5] And "[i]n determining whether or not a person is or was the spouse of a veteran, their marriage shall be proven as valid" for the purposes of veterans' benefits "according to the law of the place where the parties resided at the time of the marriage." 38 U.S.C. § 103(c); *see* 38 C.F.R. § 3.1(j).

Under New York law, a judgment of separation does not dissolve the marriage; it simply marks the end of the couple's cohabitation and may modify certain spousal obligations. *Compare* N.Y. Dom. Rel. Law § 170 (McKinney) (authorizing "[a]n action for divorce . . . to procure a judgment divorcing the parties *and dissolving the marriage*" (emphasis added)), *with* N.Y. Dom. Rel. Law § 200 (McKinney) (authorizing an action "to procure a judgment

---

Ms. Batcher's entitlement to special apportionment"). But because the Veterans Court's dissenting opinion focused on this statutory interpretation question, we will briefly address it.

[5]    As Mr. Batcher points out, the Supreme Court has indeed declared a similar definition unconstitutional for discriminating against legally married same-sex couples. *See United States v. Windsor*, 570 U.S. 744, 752, 775 (2013) (invalidating 1 U.S.C. § 7's (Defense of Marriage Act) definition of "spouse" as "refer[ring] only to a person of the opposite sex who is a husband or a wife"). But, contrary to Mr. Batcher's assertion, that ruling did not render totally inoperative statutory definitions like § 101(31) that can still be applied in a way that does not offend the Constitution, i.e., without the "opposite sex" restriction.

separating the parties from bed and board, forever, or for a limited time"); *see People ex rel. Comm'rs of Pub. Charities & Corr. v. Cullen*, 47 N.E. 894, 895 (N.Y. 1897) (noting that a decree of separation "did not dissolve the marriage," and the "parties still remained husband and wife in the eye of the law," although the "duties and obligations of the marriage relation were radically affected and wholly changed"). If anything, then, the 2005 Judgment of Separation simply corroborates Ms. Batcher's eligibility for apportionment, proving that the two were not living together when she filed her claim in 2008. It did not change Ms. Batcher's legal status as Mr. Batcher's spouse—a fact that Mr. Batcher apparently recognized, given that he later sought and obtained a divorce decree in 2010.

Mr. Batcher's argument in this court—based on Ms. Batcher's status at the time of filing her claim—diverges somewhat from Judge Greenberg's reasoning in dissent, which depended on Mr. and Ms. Batcher having legally divorced before the Board acted on the apportionment claim in 2015. *See Batcher*, 31 Vet. App. at 146. Such reasoning would needlessly punish claimants who are eligible for benefits at the time they apply but whose claim then enters a lengthy period of Board review over which they lack any control. The Veterans Court correctly deemed Ms. Batcher eligible for apportionment as Mr. Batcher's "spouse" from the time she filed her claim to the date of the Divorce Decree.

## III

We have considered Mr. Batcher's remaining arguments and find them unpersuasive. For the foregoing reasons, the judgment of the Veterans Court is affirmed.

**AFFIRMED**