# IN THE COURT OF APPEALS OF IOWA

No. 18-1006
Filed August 7, 2019

IN RE THE MARRIAGE OF JAY TODD JENSEN
AND KIMBERLY MARIE JENSEN

Upon the Petition of
**JAY TODD JENSEN,**
　　　　Petitioner-Appellant,

**And Concerning**
**KIMBERLY MARIE JENSEN,**
　　　　Respondent-Appellee.

_____

　　　　Appeal from the Iowa District Court for Lucas County, Dustria A. Relph,

Judge.


　　　　Jay Todd Jensen appeals from the decree of dissolution of his marriage to

Kimberly Marie Jensen. **AFFIRMED.**


　　　　Alexander E. Wonio of Hansen, McClintock & Riley, Des Moines, for

appellant.

　　　　Bryan J. Goldsmith of Gaumer, Emanuel, Carpenter & Goldsmith, P.C.,

Ottumwa, for appellee.


　　　　Considered by Vaitheswaran, P.J., Tabor, J., and Carr, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**CARR, Senior Judge.**

Jay Todd Jensen appeals from the decree of dissolution of his marriage to Kimberly Marie Jensen. He argues the court should not have considered his disability and special pay from his military service when awarding Kimberly's retirement accounts entirely to her. We find that awarding each party their respective retirement accounts is equitable, and we affirm the district court.

Jay was born in 1970. Kimberly was born in 1962. They married in 2000. Jay's petition for dissolution proceeded to a hearing on February 16, 2018. Their relationship produced three children, ages twenty-one, seventeen, and fourteen at the time of the hearing.

Jay served in the military during much of the marriage and was officially discharged in 2013. He has 100% disability from his military service.[1] Upon discharge, he waived his standard military retirement benefits to receive disability compensation and an additional Combat Related Special Compensation (CRSC), both of which are excluded from income tax and continue for the rest of his life. The court determined he is entitled to $3024.27 in monthly disability compensation,[2] $847 in monthly CRSC, and $1466 in monthly Social Security benefits. For purposes of child support, the court calculated his adjusted net monthly income as $5337.27. He also testified he has "a very small IPERS [Iowa Public Employees' Retirement System] account" worth about $900.

---

[1] Jay testified his military service resulted in a broken back; "all types of knee, elbow, [and] joint issues;" tinnitus; traumatic brain injury; post-traumatic stress disorder; depression; anxiety; and "feelings of isolation."

[2] The court based Jay's disability compensation on no spouse and one child.

Kimberly works for the United States Postal Service (USPS). The district court noted she "is 55 years old and appears to be in general good health." For purposes of child support, the court calculated her adjusted net monthly income as $3739.05. She contributed to two retirement accounts during her employment with USPS. First, she contributed to a Thrift Savings Plan,[3] which, as of December 31, 2016, had a value of $53,518.99[4] and would generate a monthly payment of $242 upon retirement. Second, she contributed to the Federal Employees Retirement System (FERS) in a total amount of $4085.26 as of November 8, 2017. She calculated her participation in FERS at the time entitles her to a monthly FERS benefit of $473.25 upon retirement.

On March 29, 2018, the district court issued the dissolution decree. Regarding the parties' retirement accounts, the district court stated it

> recognizes the inherent unfairness that would exist if the Court were to order Kimberly's retirement to be divided while awarding Jay the entirety of his disability payments and retirement accounts free and clear without regard to Kimberly.
>     Accordingly, the Court will award both parties their respective retirement accounts and disability payments, and the debts thereon, exclusively without either account being subject to division.

The district court also divided the parties' remaining marital assets and substantial debts,[5] and it decided matters related to the children.

---

[3] A Thrift Savings Plan "is similar to a 401(k) plan." *In re Marriage of Crosby*, 699 N.W.2d 255, 256 (Iowa 2005).

[4] The value of the Thrift Savings Plan is reduced by $13,701.76 due to a loan the parties took against the account.

[5] Excluding the values of the disability payments and retirement accounts, Jay received negative $13,804 and Kimberly received negative $12,185 in marital property.

Jay now appeals the court's decision to award Kimberly her two retirement accounts without dividing them as marital property.[6] We review a dissolution decree de novo. *In re Marriage of Howell*, 434 N.W.2d 629, 631 (Iowa 1989); Iowa R. App. P. 6.907.

A dissolution proceeding requires the court to "divide all property, except inherited property or gifts received or expected by one party, equitably between the parties after considering all of the" statutory factors. Iowa Code § 598.21(5) (2016). "An equitable division does not necessarily mean an equal division of each asset. Rather, the issue is what is equitable under the circumstances." *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009). Retirement accounts, including IPERS and USPS retirement accounts, are generally divisible marital property. *See Crosby*, 699 N.W.2d at 257–58; *Hazen*, 778 N.W.2d at 57 n.4. Therefore, the parties' retirement accounts—the IPERS account, the Thrift Savings Plan, and the FERS account—are marital property subject to equitable division after considering the statutory factors.

The parties agree Jay's disability compensation and CRSC are not marital property subject to division. *See Howell*, 434 N.W.2d at 632–33; *see also Mansell v. Mansell*, 490 U.S. 581, 594–95 (1989) (finding states lack the power to "treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits"). While the court did not divide his rights to these payments, he takes issue with the court considering these payments when dividing the marital property in order to prevent an "inherent unfairness." The

---

[6] The record on appeal includes a partial trial transcript that only contains testimony from Jay.

United States Supreme Court has found that federal law only "pre-empts the States from treating waived military retirement pay as divisible community property." *Howell v. Howell*, 137 S. Ct. 1400, 1405 (2017) (citing *Mansell*, 490 U.S. at 594–95). The Iowa Supreme Court states tse payments may be considered for other purposes in a dissolution, such as "the equitable granting of alimony or support." *Howell*, 434 N.W.2d at 633. The district court used his disability payments to calculate his income for child support purposes, which Jay does not appeal. Similarly, his disability payments may be considered in the equitable division of the parties' marital property.

The court must divide all marital property after considering numerous factors, including "[t]he earning capacity of each party" and "[o]ther economic circumstances of each party, including pension benefits." Iowa Code § 598.21(5)(f), (i). For child support purposes, the court determined Kimberly's adjusted net monthly income is $3739.05 and Jay's adjusted net monthly income— mostly consisting of his disability compensation and CRSC—is $5337.27.[7] While Jay's income will continue for the rest of his life, fifty-five-year-old Kimberly must use her smaller income to save for her pending retirement.[8] She submitted documents showing that, around the time of dissolution, her retirement accounts would only pay a total monthly benefit of $715.25 upon retirement. She can significantly increase this total monthly benefit by continuing to contribute to these

---

[7] Jay does not dispute the court's determinations of the parties' adjusted net monthly incomes.
[8] The record contains no information about when Kimberly plans to retire.

accounts.[9]  However, given her limited time to save before retirement, Jay's total disability payments will likely exceed the total monthly benefits from Kimberly's retirement accounts after she retires.

We recognize Jay made a tremendous sacrifice during his military service, and his disability payments are not simply "compensation for past services rendered."  *Howell*, 434 N.W.2d at 632–33.  Nevertheless, assigning each party their respective retirement accounts allows Kimberly to maximize her retirement income during her remaining time in the workforce.  Meanwhile, Jay will receive the entirety of his disability benefits for life plus the limited benefit from his small IPERS account, which will likely provide him with a larger total income than Kimberly's retirement income.  After considering all of the factors under Iowa Code section 598.21(5), we find this distribution of the retirement accounts is equitable, and we affirm the district court.

**AFFIRMED.**

---

[9] The record does not reveal how much Kimberly expects or hopes to eventually receive from her retirement accounts.  However, the record provides the formula for her FERS benefit, which multiplies average salary by years of service and another factor.  Using this formula with the average income she reported, if she retires ten years after dissolution at age sixty-five with twenty years of service, then her monthly FERS benefit will more than double from $473.25 to $1041.15.