# IN THE COURT OF APPEALS OF IOWA

No. 21-0307
Filed April 27, 2022

IN RE THE MARRIAGE OF JAMIE ALISON MOSS
AND RICO LAMONT MOSS

Upon the Petition of
**JAMIE ALISON MOSS,**
        Petitioner-Appellant,

**And Concerning
RICO LAMONT MOSS,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Audubon County, Greg W. Steensland, Judge.

        Jamie Moss appeals from the decree dissolving her marriage.  **AFFIRMED AS MODIFIED.**

        Mark R. Hinshaw of The Law Offices of Mark R. Hinshaw, West Des Moines, for appellant.

        Shanon M. Hounshell of SMH Law, PLLC, Ankeny, for appellee.

        Heard by May, P.J., and Greer and Chicchelly, JJ.

**MAY, Presiding Judge.**

Jamie Moss appeals from the decree dissolving her marriage to Rico Moss. Jamie argues the district court should have (1) determined Rico dissipated assets and (2) awarded her spousal support. We affirm as modified.

**I. Background Facts and Prior Proceedings**

Jamie and Rico married in 2006. During the marriage, they had two children.[1] Rico is a member of the United States Marine Corps, and the family moved often for Rico's career. After the couple married, they moved six times, including around the country and to Japan. During the marriage, Jamie finished her college degree and held various jobs of her own. At different times she worked at Red Lobster, Wells Fargo, CrossFit, and as a business manager.

In 2019, Jamie and the kids moved back to Iowa from Japan because Jamie's mother was ill. When Rico returned to the United States, he was stationed in North Carolina. That same year, Jamie initiated this dissolution action.

At trial, both Jamie and Rico focused on placing blame for the breakdown of their marriage on each other as well as third parties. Jamie claimed Rico dissipated assets when he withdrew $10,000 from a savings account. She theorized he spent the money on another woman. Rico explained that he withdrew the money because he required legal representation in separate legal proceedings.

The district court issued a decree dissolving the couple's marriage. The court determined Rico did not dissipate assets. The court declined to award Jamie

---

[1] The children were eleven and thirteen years old at the time of trial. Rico also has two adult children from a prior marriage.

any spousal support. In dividing assets, however, the court awarded Jamie a percentage of Rico's military retirement pay.

Jamie filed a motion under Iowa Rule of Civil Procedure 1.904. She asked the court to determine Rico dissipated marital assets through the $10,000 savings withdrawal as well as a $9747.23 loan[2] taken out against the savings account. So she asked to be awarded half of the (theoretical) value of the savings account had there been no (alleged) dissipation. She also asked the court to award her spousal support and retain jurisdiction to increase spousal support in the event Rico elects to take disability payments in lieu of his military retired pay—an election that would necessarily reduce the amount she receives from Rico's military retired pay. The court denied the motion.

Jamie appeals.

## II. Scope and Standard of Review

We review dissolution proceedings de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). Even so, we afford deference to the district court. *See In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007) ("We give weight to the findings of the district court, especially to the extent credibility determinations are involved."). We do so because "the district court is best positioned to evaluate the needs of the parties." *In re Marriage of Dirkx*, No. 18-0422, 2019 WL 3330625, at *2 (Iowa Ct. App. July 24, 2019). So we will affirm unless the district court failed to do equity. *See Boatwright v. Lydolph*, No. 18-0532, 2019 WL 719026, at *1 (Iowa Ct. App. Feb. 20, 2019).

---

[2] We will follow Jamie's lead and refer to the $9747.23 liability on the account as a loan.

## III. Discussion

### A. Dissipation

We first address Jamie's claim that Rico dissipated assets by dipping into his Thrift Savings Plan (TSP) without providing an accounting of his expenditures. The TSP had a net value of $2046.19 at the time of trial after Rico withdrew $10,000 and took out a $9747.23 loan. So she requests half of the value of the TSP had Rico not dissipated assets, which she values at $10,896.71.

Before we proceed to the merits of Jamie's dissipation claim, we consider whether—and to what extent—she preserved error.[3] As to her claim regarding the $10,000 withdrawal, it is clear Jamie preserved error: She testified to discovering the withdrawal and suggested Rico spent the money on another woman. However, we hesitate with respect to Jamie's claim relating to the $9747.23 loan against the TSP. It was never mentioned in any of Jamie's pre-trial filings or at trial. In fact, the only reference to it appears in an exhibit filed by Rico, as shown here:[4]

| | TSP | 11,793.42 | (9,747.23) | 2,046.19 | | 2,046.19 | E) |

Jamie made no dissipation claim relating to this notation until her rule 1.904 motion. And "[i]t is well-settled that a party fails to preserve error on new arguments or theories raised for the first time in a posttrial motion." *Mitchell v.*

---

[3] We may raise the issue of error preservation sua sponte. *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("In view of the range of interests protected by our error preservation rules, this court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal.").

[4] Jamie's brief states, "At trial [h]usband testified that he also took out a loan against the TSP account in the amount of $9747.23." However, the corresponding citation to the appendix refers to Rico's exhibit. On our review of the trial transcript, we find no such testimony from Rico about the $9747.23.

*Cedar Rapids Cmty. School Dist.*, 294 N.W.2d 689, 695 (Iowa 2013); *see also Winger Contracting Co. v. Cargill, Inc.*, 926 N.W.2d 526, 543 (Iowa 2019) (recognizing claims cannot be first raised in a rule 1.904 motion for the purpose of preserving error); *Mills v. Robinson*, No. 08-0739, 2009 WL 2951479, at *3 (Iowa Ct. App. Sept. 2, 2009) ("A motion pursuant to rule 1.904(2) is not properly used as a method to introduce a new issue not previously raised before the court."). Because Jamie did not present a dissipation claim relating to the $9747.23 loan until her post-trial motion, we conclude she did not preserve the claim for our review. So we consider only her claim relating to the $10,000 withdrawal.

> A court may generally consider a spouse's dissipation or waste of marital assets prior to dissolution when making a property distribution. The dissipation doctrine applies when a spouse's conduct during the period of separation "results in the loss or disposal of property otherwise subject to division at the time of divorce." If improper loss occurs, the asset is "included in the marital estate and awarded to the spouse who wasted the asset." However, the doctrine does not apply if the spending spouse used the monies for "legitimate household and business expenses."

*In re Marriage of Kimbro*, 826 N.W.2d 696, 700–01 (Iowa 2013) (internal citations omitted).

We use a two-prong test to analyze a dissipation claim. *Id.* at 701. Under the first prong, we decide "whether the alleged purpose of the expenditure is supported by the evidence." *Id.* (citation omitted). "When a spouse claims the other party dissipated assets and can identify the assets allegedly dissipated, the burden shifts to the spending spouse to 'show how the funds were spent or the property disposed of by testifying or producing receipts or similar evidence.'" *Id.* (citation omitted).

"If the first prong is met, then we move to the second prong, which determines 'whether that purpose amounts to dissipation under the circumstances.'" *In re Marriage of Darrah*, No. 19-0285, 2020 WL 4200831, at *2 (Iowa Ct. App. July 22, 2020) (citation omitted). To determine whether a party's expenditures equal dissipation, we consider four factors:

> (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefited the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and the amount of, the expenditure.

*Kimbro*, 826 N.W.2d at 701 (citation omitted).

Here, we have a sizable withdrawal from the TSP, an account to which both parties had access. This satisfies the first prong of the test. So we move to the second to determine if the withdrawal amounts to dissipation. Rico withdrew the $10,000 on March 11, 2020—about seven and one half months after Jamie initiated these proceedings. He explained he spent $6000 of the money on legal fees associated with a criminal proceeding in Virginia. And he explained he also had legal proceedings in North Carolina, though he did not specify how much he spent in relation to that legal proceeding. There is no evidence that this type of expenditure—money taken from the TSP for legal fees—was a typical expenditure. However, Rico explained he set up the TSP before he met Jamie. Although he intended it to serve as savings for his children, he and Jamie sometimes needed the money for debts. This suggests they dipped into the TSP as needed for expenses. Of course, this expenditure undoubtedly benefited Rico more than Jamie. But Jamie surely received some benefit from it: had Rico not paid for legal

representation, it could have negatively impacted the outcome of his criminal case, which would negatively impact Rico's employment and ability to pay Jamie child support—or, as will be discussed further, spousal support. So it cannot be said that Jamie derived no benefit. Also, we note the need for counsel in legal proceedings tends to be an urgent need that often cannot wait. All things considered, we conclude Rico did not dissipate assets by withdrawing savings to pay for legal representation in separate matters.[5]

### B. Spousal Support

Next, we address Jamie's request for spousal support. Specifically, she wants $1000 per month for ninety months followed by an award of $1 per month. The award of spousal support is discretionary and not a matter of right. *In re Marriage of Mann*, 943 N.W.2d 15, 20 (Iowa 2020). And the decision to award spousal support turns on the specific facts and circumstances of each case. *Id.* When determining whether to fashion a spousal support award, we consider the factors required by Iowa Code section 598.21A(1) (2019):

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and

---

[5] At oral argument, Jamie's counsel sought to paint Rico as immoral because he required counsel to defend him against criminal charges. But we presume Rico innocent until proven guilty of an offense. And Jamie's counsel conceded that the criminal charges against Rico had actually been dropped—Rico was not convicted of any offense.

the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

g. The tax consequences to each party.

h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

i. The provisions of an antenuptial agreement.

j. Other factors the court may determine to be relevant in an individual case.

We have long recognized three types of spousal support: rehabilitative, reimbursement, and traditional. *In re Marriage of Pazhoor*, 971 N.W.2d 530, ___, 2022 WL 815293, at *5 (Iowa 2022).

> *Rehabilitative alimony* serves to support an economically dependent spouse through a limited period of education and retraining. Its objective is self-sufficiency. An award of *reimbursement alimony* is predicated upon economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other. *Traditional alimony* is payable for life or for so long as a dependent spouse is incapable of self-support. The amount of alimony awarded and its duration will differ according to the purpose it is designed to serve.

*Id.* (citation omitted). "We allow hybrid awards designed to accomplish more than one of the foregoing goals." *Id.* And recently, our supreme court formally recognized transitional support as a fourth type of spousal support. *Id.* at *8. "Transitional [spousal support] can ameliorate inequity unaddressed by the other recognized categories of support. Divorcing spouses must adjust to single life. If one is better equipped for that adjustment and the other will face hardship, then transitional [support] can be awarded to address that inequity and bridge the gap." *Id.*

With these guidelines in mind, we turn to the particular facts of this case to determine whether the district court's denial of spousal support was equitable. Jamie does not require additional training or education to reenter the workplace— she already has a college degree and is employed[6]  So she is not in need of rehabilitative support.  And she does not contend that she made economic sacrifices that directly enhanced Rico's future earning capacity.  So she is not in need of reimbursement support.

Instead, Jamie contends she qualifies for traditional support.  This type of support is typically awarded after long-term marriages where life patterns and future earnings are predictable.  *Id.* at *9. We generally consider marriages lasting twenty years or more to qualify as long-term marriages.  *Id.*  But there is no hard-line durational threshold, and our courts have awarded traditional support for marriages lasting less than twenty years.  *Id.*  Even if a marriage is of sufficient duration, however, we will only award traditional support when there is a need for it by one party and the other has the ability to pay.  *Id.*

Certainly Jamie put her career on the back burner during the marriage to a certain extent as the family regularly moved for Rico's military career.  Doing so would naturally make it difficult for Jamie's career to flourish.  But Jamie and Rico were only married for fourteen years, short of the twenty-year benchmark.  Both are in their forties and employable.  A standard award of traditional support would likely require Rico to pay support for many years longer than their marriage lasted.

---

[6] Jamie was laid off from her job for a time due to the COVID-19 pandemic, but she testified she returned to her employment there.

*See id.* And Rico, like Jamie, is on precarious financial footing. We doubt he could pay much in the way of traditional support.

Jamie has floated a modified version of a traditional support award though. She notes she received a portion of Rico's military retired pay in the property division. But she worries she will never receive her portion of his retired pay because Rico could receive disability compensation in lieu of his military retired pay. *See Howell v. Howell*, 137 S. Ct. 1400, 1402–04 (2017) (explaining federal statute prevents a former spouse from receiving any amount of a veteran's retired pay that was deducted as a result of the veteran's receipt of disability benefits). So, she contends, we should plan for what she treats as an inevitability (i.e., her not receiving her full portion of Rico's retired pay) and award her $1000 monthly support for ninety months and then award her $1 a month going forward. That way, she could petition to modify the spousal support award should Rico receive disability payments, thereby reducing the retired pay either of them would receive. See *id.* at 1406 ("[W]e note at a family court, when it first determines the value of a family's assets, remains free to take account of the contingency that some military retirement pay might be waived, or, . . . take account of reductions in value when it calculates or recalculates the need for spousal support.").

When considering Jamie's unusual proposal, we first consider whether Jamie is generally entitled to any spousal support. We think Jamie's ninety-month proposal is more akin to the newly-recognized transitional support (which had not been formally adopted by our supreme court when the district court considered this case) than traditional support. And we think Jamie is a good candidate for transitional support. She has the capacity for self-support, but she has insufficient

income or liquid assets to transition to single life without undue hardship. *See Pazhoor*, 971 N.W.2d at \_\_\_, 2022 WL 815293, at \*6. However, we think her request for $1000 for ninety months goes too far. Instead, we find an award of $500 for thirty-six months to be sufficient.

Next, we consider her request for ongoing support of $1 per month so that—if Rico takes disability—she could seek greater support through a modification action. *See In re Marriage of Erlandson*, No. 20-1607, 2022 WL 468726, at \*6 (Iowa Ct. App. Feb. 16, 2022) ("While the authority of courts to modify spousal support includes the power to reinstate a finite award that has terminated, to do so, the circumstances must be 'extraordinary' and 'render the original award grossly unfair.'" (citation omitted)). Critically, we note Rico has not received any disability rating yet. And while he has suffered some service-related injuries, Rico testified he has no idea if he will receive any disability rating in the future. However, even the Supreme Court has recognized that a veteran who has received a disability rating "often elects to waive retirement pay in order to receive disability benefits" because "retirement pay is taxable while disability benefits are not." *Howell*, 137 S. Ct. at 1403. And a state court could not order Rico to otherwise compensate Jamie for any forfeited retirement pay if he should receive a disability rating and elect to receive disability instead of retirement pay. *See id.* at 1406. So Jamie's concerns are not without merit. And we think it is equitable to extend the spousal support award—although in a nominal amount—to leave the door open for Jamie to seek modification of the spousal support award in the event Rico elects to receive disability instead of retirement pay. So we conclude Jamie should

receive both (1) $500 per month for thirty-six months, as already mentioned, and then (2) $1 per month for the remainder of Rico's life.[7]

**AFFIRMED AS MODIFIED.**

---

[7] To avoid any future confusion, we explicitly state that—while we recognize the possibility that Rico will take disability at some point in the future—we do not know whether or not he will.  So, if he does take disability in the future, that election could constitute a change in circumstances that could justify a modification of spousal support.  Beyond this, we express no opinion as to the possible merits of any future modification action.