COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Ortiz and Friedman
Argued at Norfolk, Virginia

UNPUBLISHED

WILLIAM R. LOTT

v.      Record No. 1322-22-1

MARIA V. LOTT

MEMORANDUM OPINION* BY
JUDGE DANIEL E. ORTIZ
DECEMBER 12, 2023

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

Katherine D. Currin (Morris, Crawford & Currin, P.C., on briefs), for
appellant.

Jessica R. Casey (Casey Legal, P.C., on brief), for appellee.

The trial court's award of payments representing wife's portion of husband's military

retirement pay was proper under the indemnification clause of the Lotts' property settlement

agreement.  Because at the time of the final order the Supreme Court had yet to affirm the

enforceability of indemnification clauses in relation to military retirement pay, the trial judge

devised its award of disability pay based on a complicated parsing of the type of pay at issue.

That consideration is not necessary in light of the Supreme Court's decision in *Yourko v. Yourko*,

___ Va. ___ (Mar. 30, 2023) (*Yourko II*), *rev'g Yourko v. Yourko*, 74 Va. App. 80 (2021)

(*Yourko I*).

Even still, because the amount awarded to wife representing husband's disability pay was

proper under the indemnification clause, we hold that the trial court did not err, and thus partially

affirm the trial court's treatment of husband's disability pay under the right-for-a-different-

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

reason doctrine. Because wife's assignment of cross-error as to the exact amount was not timely filed in accordance with Rule 5A:25(d), we decline to consider it. Finally, we find that the trial court erred when it decided the amount of spousal support owed without a hearing on the issue, in violation of Rule 4:15, and remand for further proceedings as to the spousal support arrearages.

## BACKGROUND

William Lott ("husband") and Maria Lott ("wife") married in 1996 and separated with the intent to terminate their marriage in 2013. Before and during the marriage, husband was an active-duty member of the United States Navy, serving for just over twenty years before his honorable discharge in 2014. Husband was determined to have a service-connected disability and retired under Chapter 61.[1]

In September 2014, the parties entered into a property settlement agreement ("PSA"), under which wife was entitled to 41% of husband's "disposable military retirement pay."[2] The PSA further stated:

> If the [h]usband is allowed to waive any portion of his retired pay in order to receive disability pay, then the [w]ife's portion of the [h]usband's disposable retired pay shall be computed based on the amount that the [h]usband was to receive before any such waiver was allowed or occurred. The [h]usband shall pay to the [w]ife directly any sums necessary in order that the [w]ife will not suffer any reduction in the amount due to her as a result of the [h]usband's waiver in order to receive disability pay.

---

[1] Retired military service members may be eligible to receive disability-related retirement pay based on injuries sustained during their service, based on statutory criteria laid out in 10 U.S.C. §§ 1201-1202. This status and associated benefits are colloquially referred to as "Chapter 61 retirement."

[2] Both the PSA and legal authorities use "retirement pay" and "retired pay" interchangeably. Throughout this opinion, we use the term "retirement pay," unless quoting another source or referring to "disposable retired pay" as a statutory term of art.

The trial court entered a final decree of divorce and a military pension division order ("MPDO") in December 2016. The MPDO referenced the PSA and awarded wife "forty-one percent (41%) of the value of [husband's] military pension benefits."

Husband began receiving military retirement benefits on January 1, 2015. At that time, he elected to waive a portion of his retirement pay in order to receive tax-exempt disability pay for which he was eligible. Though the distribution of the remaining retirement pay is not at issue here, the parties dispute the proper classification of the disability pay and thus whether distribution of the payments to wife would violate federal law. *See Howell v. Howell*, 581 U.S. 214, 215, 221-23 (2017) (holding that a court could not order a veteran to indemnify their former spouse for the reduction in retirement pay associated with a waiver).

In September 2019, husband filed a motion to establish arrears and/or credits, challenging the sums that wife had received as her share of his disability pay. He claimed that as a result of his overpayment of his military retirement benefits, he had actually paid off all of his spousal support and attorney fees arrearages and was owed approximately $5,000. In response, wife filed a motion to show cause arguing that husband had not paid her the sums owed for military retirement and attorney fees.[3] Wife later filed another motion to show cause which included an alleged failure to pay $11,400 of spousal support as well.[4]

---

[3] Wife had previously filed two similar motions alleging failure to pay spousal support, military benefits, and arrearages on attorney fees, as well as addressing various miscellaneous disputes. Neither of those earlier motions are at issue here.

[4] The trial court transcript from August 27, 2021, suggests that wife's failure to include spousal support in her initial motion was in error. As a combined result of wife's late filing and husband's insistence that his overpayment of retirement benefits would more than compensate for any arrearages in spousal support, the court's interlocutory order did not discuss spousal support, and subsequent hearings consistently delayed any discussion of the exact amount owed in spousal support. Wife's filing on June 13, 2022, suggested that past-due spousal support as of that date had increased to $13,200.

Over the course of two years, the court held multiple hearings and entertained several rounds of briefing from the parties to determine the appropriate classification and division of the disability pay here. On July 12, 2021, the court issued an interlocutory order, finding that husband's disability pay was divisible and *Howell* did not apply. In a July 6, 2022 hearing, the court orally indicated a likely ruling for husband on the disability pay issue and continued the hearing until October 12, 2022, primarily to allow the parties to reach agreement on whether wife would repay husband for her alleged overpayment since the time of the divorce decree. Counsel also asserted the need to discuss spousal support arrearages in the next hearing.

On August 5, 2022, the court issued a final order harmonizing the relevant federal statutes and regulations and parsing husband's retirement pay accordingly. The court ultimately found that most of husband's pay was "disposable retired pay" under 10 U.S.C. § 1408(a)(4) and therefore subject to division. The court awarded wife payments of $841.41 per month, over husband's objection.[5] The court also found that husband owed wife $11,400 in spousal support but declined to hold him in contempt for nonpayment. The court cancelled the October 12 hearing on the issue of spousal support owed, instead including all issues in its August order. This appeal followed.

## ANALYSIS

### I. Legal Context

The complexity of the issues presented in the matter compel us to review the ever-evolving legal landscape in this arena. We begin with an overview of the existing federal

---

[5] Specifically, the court found that husband was receiving $2,195 of concurrent retirement and disability pay ("CRDP") each month, all of which qualified as divisible "disposable retired pay" rather than disability pay, but that his disposable retired pay should be reduced by $142.77 to account for his survivor benefits coverage ("SBP"). The court thus declared that wife was entitled to 41% of $2,052.23, or $841.41 per month.

statutes and the relevant cases interpreting them. Federal law provides for multiple sources of payment to military veterans upon their retirement. *See, e.g.*, 10 U.S.C. § 8327 (retirement benefits received after at least 20 years of service); 10 U.S.C. §§ 1201-1202 (disability pay); 10 U.S.C. § 1414 (concurrent retired and disability pay). In certain cases, a disabled veteran may elect to waive a portion of their retirement pay and instead receive the same amount of disability pay, which is exempt from federal, state, and local income taxes. *Mansell v. Mansell*, 490 U.S. 581, 583-84 (1989). The Uniformed Services Former Spouses' Protection Act ("the Act") allows courts to divide veterans' "disposable retired" pay in divorce cases. *See id.* at 584-85. Shortly after the Act's passage, the United States Supreme Court noted that: "'Disposable retired . . . pay' is defined as 'the total monthly retired or retainer pay to which a military member is entitled,' minus certain deductions. Among the amounts required to be deducted from total pay are any amounts waived in order to receive disability benefits." *Id.* at 584-85 (quoting 10 U.S.C. § 1408(a)(4)). Thus, upon divorce, a court may order the division of a veteran's retirement pay but not their disability pay.

In *Howell*, the Court further held that a court could not perform an end-run around the Act's requirements by ordering a veteran to indemnify their ex-spouse for any reduction in the ex-spouse's portion of the veteran's retirement pay because of a waiver. *See Howell*, 581 U.S. at 222. The Court did not address whether parties could independently agree to an indemnification provision in a property settlement agreement or other contract. *See Yourko II*, ___ Va. at ___.

While the Lotts' case was pending before the trial court, a similar case, *Yourko v. Yourko*, wound its way through the Virginia court system. *See Yourko I*, 74 Va. App. 80, *rev'd*, *Yourko II*, ___ Va. ___. In *Yourko I*, this Court held that court enforcement of an indemnification clause that had the practical effect of dividing disability retirement pay was pre-empted by federal law. *See Yourko I*, 74 Va. App. at 96-101. The trial court's final order relied on the holding in *Yourko*

*I* to explicitly rule out any practical effect of the indemnification clause in this case. However, earlier this year, the Supreme Court reversed that holding, finding that courts can enforce indemnification clauses related to military disability pay, if they stem from the parties' voluntary agreement. *See Yourko II*, ___ Va. at ___. Accordingly, we revisit the significance of the indemnification provision here, apply the guidance set forth in *Yourko II*, and find that the provision applies to resolve husband's claims as to assignments of error one through four.

## II. Indemnification Clause Enforceability

"[W]e review the trial court's statutory interpretations and legal conclusions *de novo*." *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 434 (2020) (alteration in original) (quoting *Navas v. Navas*, 43 Va. App. 484, 487 (2004)). Similarly, we review the trial court's interpretation of the PSA de novo. *Price v. Peek*, 72 Va. App. 640, 646 (2020).

We find that the trial court reached the right result as to the amount due to wife, but base our holding on alternative grounds—that the indemnification clause in the Lotts' PSA should be enforced. Under the right-result-different-reason principle, an appellate court "do[es] not hesitate, in a proper case, where the correct conclusion has been reached but [a different] reason [is] given, to sustain the result [on an alternative] ground." *Vandyke v. Commonwealth*, 71 Va. App. 723, 731 (2020) (alterations in original) (quoting *Banks v. Commonwealth*, 280 Va. 612, 617 (2010)). A court must establish two conditions before applying this "right-result-different-reason" approach. *Id.* at 731-32. First, the court "must show that all evidence necessary to that alternate ground was before the trial court. . . . If additional factual findings would be necessary to support the alternative ground for decision, the doctrine may not be applied." *Id.* at 732. Second, the evidence necessary "must have been undisputed." *Id.*

The right-result-different-reason doctrine applies here because our analysis turns entirely on the legal question of the enforceability of the indemnification clause in the Lotts' PSA. The

- 6 -

existence and contents of the PSA, including the indemnification clause, are not in dispute; the parties dispute only their legal significance. Further, the trial court made factual findings about the amount and type of husband's military retirement benefits. No other factual findings are required here.

The indemnification clause in the Lotts' PSA is legally enforceable and provides for the outcome in this case. In *Yourko II*, the Supreme Court determined that "federal law does not bar courts from upholding [indemnification] agreements or from enforcing indemnification provisions that may be included to ensure that payments are maintained as intended by the parties." *Yourko II*, ___ Va. at ___. The Court noted that although Congress intended to shelter veterans' disability pay from division upon divorce, "neither Congress nor the United States Supreme Court has ever placed any limits on how a veteran can use this personal entitlement once it has been received." *Id.* at ___. Rather, indemnification clauses within property settlement agreements should be given the same treatment as contracts in general, notwithstanding the unique relationship of the contracting parties. *Id.* at ___.

Here, the Lotts' PSA first provides that wife would receive 41% of husband's "disposable military retirement pay." The PSA then provides that husband must indemnify wife should he elect to waive his retirement pay in favor of disability pay: "If the [h]usband is allowed to waive any portion of his retired pay in order to receive disability pay, then the [w]ife's portion of the [h]usband's disposable retired pay shall be computed based on the amount that the [h]usband was to receive before any such waiver . . . occurred." The agreement further requires that husband pay wife directly any amount necessary to maintain her payment levels as if he had not elected disability pay. There is no suggestion that the PSA was anything less than a privately negotiated agreement. Unlike in *Howell*, in which a court was imposing an indemnification agreement upon the parties contrary to federal law, this is simply a private contract, determining

how the parties are to distribute husband's disability pay after it is received. *See Howell*, 581 U.S. at 219, 222-23. We thus hold that the indemnification clause here is enforceable.

Under the indemnification clause, husband must pay wife any amount she would have received as retirement pay but which she does not receive because of his waiver and election of disability pay. The PSA describes that baseline amount as 41% of husband's "disposable military retirement pay." The trial court found that, as of the time of its order, husband was receiving $2,195 per month of concurrent retirement and disability pay ("CRDP"), which, absent husband's waiver, would have been treated as retirement pay. Because the indemnity clause requires husband to reimburse wife for any reduction in his retirement pay as a result of his waiver, the specific statutory treatment of the CRDP at issue, discussed at length by the trial court, is not relevant. The indemnity clause requires husband to pay wife the value of 41% of the CRDP payments because whether the CRDP is retirement pay or disability pay under the statute, wife would have received that portion of the payments absent husband's waiver.

From the CRDP, the court subtracted $142.77 of survivor benefits coverage ("SBP") to reach $2,052.33 of disposable retired pay. In her assignment of cross-error, wife asserts that the trial court erred in requiring her to pay for husband's survivor benefit plan when she was no longer listed as a beneficiary. Thus, she argues, the court erred in deducting the SBP from husband's disposable retired pay. But wife's assignment of cross-error was not timely filed in accordance with Rule 5A:25(d), and as such, we will not consider it.[6] *See Blue Ridge Poultry & Egg Co. v. Clark*, 211 Va. 139, 141 (1970) (refusing to consider an assignment of cross-error that was not timely filed in accordance with the rule). We thus rely on the trial court's factual

---

[6] While ordinarily wife's claims would be treated separately, we address them here, as they are necessary to understanding the proper amount of payments due under the indemnification clause.

findings and calculations, which establish that husband's disposable retirement pay is $2,052.33 per month. Wife is thus eligible under the PSA for 41% of $2,052.33, or $841.41 per month.

Though the trial court reached its conclusion without considering the indemnification clause, noting this Court's previous holding in *Yourko I*, the court nonetheless determined that husband owed wife the same amount after parsing the federal statutes and case law on military benefits. Because we hold that the indemnification clause is enforceable and applies here, we decline to address whether the trial court accurately interpreted and applied federal law in categorizing husband's retirement benefits. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))). We therefore affirm the value of the trial court's award of payments to wife, albeit for a different reason than that reached by the trial court.

We note that because the trial court found the payments at issue to be "divisible and distributable CRDP under 10 U.S.C. § 1408," the trial court's order may have been enforceable by direct payments from the federal agency. *See* 10 U.S.C. § 1408(d). The trial court also provided that husband was to supplement the agency's payments, as needed, to ensure that wife received the full value owed her under the PSA. Because we rest our holding on the alternative grounds that the indemnification clause requires such payments by husband regardless of the classification of the military benefits, on remand the trial court should amend its order to require husband to make the payments directly to wife, rather than via agency withholding.

### III. Spousal Support Arrearages

Finally, husband alleges that the trial court denied him due process and violated Rule 4:15 when it ruled on wife's motions to show cause without providing a hearing on the amount

of spousal support owed.[7]  At the hearing on July 6, 2022, the trial court heard arguments on the military pay issues, indicated orally that it would rule in favor of husband, and continued the hearing until October 12, 2022, directing the parties to confer over whether wife would refund husband the amount he allegedly overpaid her for military benefits.  At the July 6 hearing, wife's counsel asserted several times that the court also needed to address the show cause motion related to spousal support.  Though the court did not directly respond to counsel's assertions, it implicitly postponed such discussion until the October hearing.  Despite the court's oral indications that it would find for husband on the issue of military pay, the court's final order on August 5, 2022, found that husband in fact owed wife approximately $841.41 each month in retirement pay, as discussed above.  The trial court also found that husband owed wife $11,400 in spousal support under the original divorce decree and declined to find husband in contempt. The trial court then cancelled the scheduled hearing.  In its cancellation letter, the court asserted that "it previously had heard argument regarding the issue of the Show Cause, prior to the interlocutory order of July 12, 2021," yet at that time the issue of spousal support was not properly before the court and the record shows that the trial court declined to address the amount of arrearages due.[8]

Rule 4:15(d) provides that, except in limited cases, a trial court "will hear oral argument on a motion" at the request of any party.[9]  *See also N. Va. Real Estate, Inc. v. Martins*, 283 Va.

---

[7] This claim constitutes husband's assignment of error five.  We also note here that husband withdrew his appeal as to assignment of error six in his opening brief.

[8] It appears that the relevant hearing in fact occurred on August 27, 2021, after the interlocutory order finding in wife's favor had been issued.

[9] The rule limits oral argument "on a motion for reconsideration or any motion in any case where a pro se incarcerated person is counsel of record" unless requested by the court.  Rule 4:15(d).  Neither exception is applicable here.

- 10 -

86, 119 (2012). Though a court may postpone a hearing in order to ensure fairness and allow for the filing of written briefs or limit the length of oral argument, a court may not altogether dispense with oral argument if requested by a party. *See* Rule 4:15(d). In this case, where the record includes no meaningful discussion of the amount of spousal support arrearages even over the course of multiple hearings and where both parties believed the issue was to be discussed in the October hearing, the trial court erred in ruling on the amount owed without holding a hearing on the issue. Further, given that the trial court's finding establishes husband's obligations, the violation of which may subject him to civil contempt, we cannot say that such error was harmless. *See* Code § 8.01-678. The absence of any hearing at all on the amount owed precludes us from finding that "the parties have had a fair trial on the merits and substantial justice has been reached." *Id.* As a result, we reverse the trial court's decision establishing the amount of spousal support arrearages owed and remand for a hearing on the issue, as requested by both parties before the court's August 5, 2022 order.[10]

CONCLUSION

The trial court's award of $841.41 of husband's military retirement benefits equal the amount that wife would have received absent husband's waiver of his retirement pay. Thus, under the indemnification clause of the Lotts' PSA, wife should receive $841.41. Although the trial court reached the amount through different analysis, we affirm in part the trial court's award under the right-result-different-reason doctrine and remand for the trial court to enter an order requiring husband to make these monthly payments. As to assignment of error five, we remand for the trial court to hold a hearing on the amount of spousal support arrearages due. Further,

---

[10] Because we find that Rule 4:15(d) requires a hearing in this case, we decline to reach husband's related due process claims. *See White*, 293 Va. at 419 (discussing judicial constraint).

because wife's assignment of cross-error was not timely filed, we do not consider it and make no ruling on it here.

*Affirmed in part, reversed in part, and remanded in part.*