COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Lorish
Argued at Norfolk, Virginia

**PUBLISHED**

JODY BART RANDOLPH

v.      Record No. 0277-22-1

KERRY ANN SHEEHY

OPINION BY
JUDGE LISA M. LORISH
JANUARY 10, 2023

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

Emily K. Miller (Julia E. Keller; Keller Law Group, on briefs), for
appellant.

(LeeAnne C. Schocklin; Parks Zeigler PLLC, on supplemental brief),
for appellee.

The parties divorced and reached a property settlement agreement that was ratified by the

circuit court into a final divorce decree. Under the agreement, Kerry Ann Sheehy (appellee) was to

receive 50% of the marital share of the disposable military retired pay for her former husband Jody

Bart Randolph (appellant). The agreement also prohibited Randolph from taking any action to

reduce the amount of her share, including any election to receive disability pay instead of retired

pay,[1] and Randolph agreed to indemnify Sheehy if any actions he took reduced the amount she was

to receive. Two years later, Randolph retired from the United States Navy and sought to receive

tax-free disability pay as well as Combat-Related Special Compensation ("CRSC"). The effect was

to reduce his disposable military retired pay, decreasing the amount that Sheehy received. After

---

[1] Courts, including those quoted in this opinion, have alternatively used "retired pay" and "retirement pay" to describe non-disability payments made to retired military veterans. We use "retired pay" here, the term used in the governing statutes, administering agency documents, and parties' agreement.

Sheehy petitioned for a rule to show cause, Randolph ultimately indemnified her under their agreement. Still, the court issued an order requiring Randolph to revoke the CRSC election. We find the court was without authority to issue such an order.

BACKGROUND

Randolph and Sheehy divorced in 2017. Under their property settlement agreement, Sheehy would "receive fifty (50%) percent of the marital share (as defined by [Code § 20-107.3]) of [Randolph's] *disposable military retired pay* as an equitable division of the marital property." (Emphasis added). Randolph agreed "not to pursue any course of action which would defeat, reduce, or limit [Sheehy's] right to receive her 50% of the marital share" of his military retired pay "or which would decrease or limit the amount of any such benefits." These prohibited actions "include, but are not limited to . . . waiving any portion of [Randolph's] disposable retired pay to receive disability pay." If Randolph took "any action" which reduced Sheehy's share, he agreed to "indemnify [Sheehy] by paying directly to [Sheehy] the difference between the [50%] of the marital share . . . of the pension that [Sheehy] should receive pursuant to this Agreement, and the amount she actually receives." This indemnification extends to "any of [Sheehy's] costs associated with enforcing this provision of the Agreement, including reasonable attorney's fees." As for attorney fees more broadly, the agreement provides that in "any court proceeding . . . to enforce or prevent the breach of any provision hereof, the losing party shall be responsible for all expenses incurred thereby, including but not limited to, all reasonable litigation expenses, costs of court and actual attorney's fees." The court entered a final divorce decree incorporating this agreement in October 2017.

Randolph retired from the United States Navy in 2019, and he and Sheehy began receiving their respective shares of his disposable military retired pay. In January 2020, the amount of monthly military retired pay Sheehy received decreased from $1,097.12 to $414.59.

In June 2020, Sheehy petitioned for rule to show cause, alleging that Randolph breached the final divorce decree and agreement when her share of his military retired pay was reduced after he chose to receive "disability pay." She also requested attorney fees.

At an initial hearing on the show cause in February 2021, it emerged that Randolph had elected to receive disability pay as well as CRSC with the net effect that his disposable military retired pay was lower, decreasing the pot from which Sheehy's 50% share could be taken. Randolph paid Sheehy the $9,603.18 he was in arrearage before a second scheduled February hearing.

Randolph argued at that next hearing that he should not be found in contempt because he had complied with the agreement's indemnification provision and paid Sheehy's attorney fees. The court took under advisement any determination of whether Randolph was in contempt for violating the final decree of divorce and ordered Randolph to "ascertain if he is able to place an irrevocable allotment" from the Defense Financing and Accounting Service ("DFAS") that would permanently revoke his entitlement to CRSC "to ensure [Sheehy] shall receive her full Court awarded military retirement benefit" in the future. The court also ordered Randolph to pay $11,650, plus interest, toward Sheehy's attorney fees.

At a June 2021 hearing, Randolph explained that while he could not place an irrevocable allotment through DFAS, he did set up an allotment through which he kept reimbursing Sheehy for the shortfall in what she was owed under the agreement's indemnification provision. Sheehy agreed that the allotment had continued to cover the full balance of what she was owed. In June 2021, Randolph also requested that the circuit court enter an order allowing an interlocutory appeal of its ruling that Randolph must revoke his CRSC, which the court denied.

The parties returned to court in October 2021. The court again took under advisement any finding of contempt. But the court ordered Randolph to "revoke the Combat Related Special

Compensation election at this earliest opportunity" and "maintain the allotment that was established to reimburse" Sheehy. The court further ordered Randolph to pay an additional $5,729 for Sheehy's attorney fees. Randolph noted his objection on the order: "As there is insufficient evidence to find [Randolph] in contempt and, assuming *arguendo*, there is sufficient evidence, an award of attorney's fees is not supported by law, and; the award of attorney's fees is excessive; as this Court lacks jurisdiction to order [Randolph] to revoke [CRSC]." The court then denied Randolph's motion for certification of this latest order as an appealable interlocutory order.

In January 2022, the parties appeared for a final hearing. There, Randolph's counsel informed the court, "In December when [Randolph] received his opportunity to . . . elect or decline the CRSC, he declined," as the court had ordered. His counsel also highlighted the substantial lifetime tax ramifications Randolph faced from his non-taxable CRSC reverting to taxable retired pay.

The court entered a final order dismissing the show cause petition, finding Randolph not in contempt. The order also required Randolph to "revoke the Combat Related Special Compensation election at his earliest opportunity," which he had done the month before. By separate order the same day, the court ordered Randolph to pay $5,000 more in attorney fees. Randolph objected on both orders, making the same arguments he now raises on appeal.

ANALYSIS

Randolph argues that the court abused its discretion by ordering him to revoke his CRSC because the court lacked jurisdiction to do so. This presents a question of law we review de novo. *Yourko v. Yourko*, 74 Va. App. 80, 87 (2021), *appeal granted* (Va. Sept. 14, 2022).

A. *Yourko* sets out the parameters of federal preemption relevant here.

In *Yourko*, this Court thoroughly set out the complicated intersection of federal law—specifically the Uniformed Services Former Spouses Protection Act ("USFSPA")—and a state court's authority in the equitable distribution of military retirement benefits. *Id.* at 92-96. In brief, before the USFSPA's enactment, the United States Supreme Court held that military retired pay was not subject to division between spouses as a part of a property settlement because federal law preempted state law in that area. *McCarty v. McCarty*, 453 U.S. 210 (1981). In *McCarty*, the Court reasoned that allowing military retired pay to be treated as marital property in a divorce would frustrate Congress' intention to award military retired pay to the veteran and no one else. *Id.* at 232-35. In response to *McCarty*, Congress enacted the USFSPA, expressly giving state courts "the authority to treat disposable retired pay as community property" in divorce proceedings. *Yourko*, 74 Va. App. at 100 (quoting *Mansell v. Mansell*, 490 U.S. 581, 589 (1989)).

A wrinkle quickly appeared. Qualifying veterans can seek disability benefits administered by the Department of Veterans Affairs (VA). To prevent double dipping, when a retired veteran elects to receive disability benefits, federal law offsets that amount with an equivalent decrease in the veteran's retired pay. 38 U.S.C. §§ 5304, 5305. While retired pay is federally taxed as normal income, disability pay is not taxed. *Id.* § 5301(a)(1); I.R.C. § 104(b)(2).

In a series of cases, the United States Supreme Court has held that state courts lack the authority to treat military disability benefits as marital property. The USFSPA's "grant of power was 'precise and limited' in that it did not include the authority to divide any portion of a veteran's retirement pay that was 'waived in order to receive veterans' disability payments.'"

- 5 -

*Yourko*, 74 Va. App. at 100 (quoting *Mansell*, 490 U.S. at 589).[2]  *Mansell* reasoned that because *McCarty* had held states could not even divide military *retired* pay in a divorce before the USFSPA's enactment, *McCarty* still governed military benefits not included in the USFSPA's limited "affirmative grant of authority."  *Mansell*, 490 U.S. at 588.  Thus, "federal law preempted state courts from dividing" disability payments a veteran received in exchange for "waived military retirement pay."  *Yourko*, 74 Va. App. at 94 (describing *Mansell*).  What is more, the Supreme Court recently held that a state court lacked the authority to indemnify or reimburse a former spouse for any difference in retired pay resulting from the waiver of retired pay to receive disability pay.  *Howell v. Howell*, 137 S. Ct. 1400 (2017).

Bound by *Howell*, this Court explained in *Yourko* that it is "not within a state court's power to require a servicemember to 'reimburse' or 'indemnify' a spouse for retirement pay waived (or diminished) to receive veteran's disability payments."  74 Va. App. at 100 (citing *Howell*, 137 S. Ct. at 1406).  "Ordering a veteran to pay a former spouse the difference in benefits after a disability pay deduction, particularly a dollar-for-dollar reimbursement, would 'displace the federal rule and stand as an obstacle to the . . . purposes and objectives of Congress.'"  *Id.* at 95 (quoting *Howell*, 137 S. Ct. at 1406).  Thus, "a state court cannot order a veteran to indemnify a former spouse for any loss caused by a veteran's acceptance of disability pay which reduces retirement pay."  *Id.* at 100 (citing *Howell*, 137 S. Ct. at 1406).

---

[2] As Justice O'Connor, writing in dissent in *Mansell*, recognized, "The harsh reality of this holding is that former spouses . . . can, without their consent, be denied a fair share of their ex-spouse's military retirement pay simply because [the ex-spouse] elects to increase his [or her] after-tax income by converting a portion of that pay into disability benefits."  490 U.S. at 595.  She found it "inconceivable that Congress intended the broad remedial purposes of the statute to be thwarted" by such a loophole.  *Id.* at 603.

B. An election to receive CRSC instead of CRDP similarly reduces the amount of retired pay the USFSPA allows a state court to distribute.

This dollar-for-dollar waiver of retired pay for disability pay framework got more complicated in 2004 when new legislation took effect allowing certain disabled veterans to receive either Concurrent Retirement and Disability Pay (CRDP) *or* CRSC. CRDP and CRSC only apply to eligible veteran retirees who have already qualified for disability pay. A veteran with at least twenty years of qualifying military service and a disability rating of at least 50% is eligible for CRDP, and as such "is entitled to be paid both" retired pay and disability compensation without being subject to the required offsets. 10 U.S.C. § 1414(a); Dep't of Def., *Concurrent Retirement and Disability Payment (CRDP)*, DoD 7000.14R, Fin. Mgmt. Reg. vol. 7B, ch. 64 (Oct. 2020). If a veteran qualifies, they are automatically enrolled in the CRDP program with no separate application or election. CRDP recipients receive disability payments *in addition to* the full retirement payments they would have originally received because "the monthly amount of retired pay" they waived to accept disability compensation is reinstated in full. DoD 7000.14R, *supra*, at 64-4. CRDP payments "are payments of retired pay and are taxable." *Id.* at 64-7.

On the other hand, retired military veterans who obtained a disability specifically while in combat can elect to receive CRSC. 10 U.S.C. § 1413a (2021). CRSC recipients also receive disability payments in addition to the same amount of full retirement benefits they would receive otherwise, but the mechanics are different. *See id.* § 1413a(b); DoD 7000.14-R, *supra*, at 63-12, 63-13 (May 2022). Whereas CRDP essentially reinstates the amount of retired pay that a veteran has to waive to qualify for disability payments, CRSC is paid to the veteran as additional non-taxable "special compensation" in the same amount. *Id.* In both circumstances, the veteran avoids "losing" the retired pay that is usually offset for the receipt of disability pay. But retired

pay replaced by CRSC is a "tax free entitlement" while retired pay returned through CRDP is taxable.[3]  A qualified retiree may receive either CRDP or CRSC but not both.  10 U.S.C. § 1414(d)(1).  Every year, a qualified retiree "shall have the right to make an election" to change between CRDP and CRSC during an "annual open season."  *Id.* § 1414(d)(2).[4]

Because the retired pay reinstated to a veteran through CRDP is still considered retired pay, it may be considered marital property under USFPSA.  CRSC, as an additional payment, is distinct from retired pay.  To sum up, then, the former spouse of a disabled veteran who automatically received CRDP payments would not see a decrease in her share of retired pay.  But if the veteran elected to receive CRSC instead, the amount of retired pay would decrease.  The following chart[5] reflects the different scenarios and impacts on the retiree and former spouse:

---

[3] DFAS, *Combat-Related Special Compensation (CRSC)* (Aug. 6, 2019), https://www.va.gov/resources/combat-related-special-compensation-crsc/.

[4] The annual enrollment period prevents us from dismissing this case as moot.  Left in place, the court's existing order conceivably prevents Randolph from electing to receive CRSC the next time he is entitled to do so by statute.  The limited annual enrollment period, from January 1-31 each year, is also why we issue this opinion now while recognizing that the Supreme Court has granted review in the *Yourko* case cited herein.  The financial loss to Randolph from another year of electing CRDP instead of CRSC would be substantial and non-recoverable.

[5] The first two sections of this chart were adapted from Table 1 found in Mark E. Sullivan & Charles R. Raphun, *Dividing Military Retired Pay: Disability Payments and the Puzzle of the Parachute Payment*, 24 J. Am. Acad. Matrim. Laws. 147, 152 (2011).

|  | *Retiree* | *Former Spouse* |
|---|---|---|
| **No Disability Waiver, Equal Division of Monthly $2,000 Pension** | | |
| Share for each party | $1000 | $1000 |
| Taxes (assume 20%) | $200 | $200 |
| Total payment to each after tax | $800 | $800 |
| **Disability Waiver of $500, Equal Division of Monthly $2,000 Pension** | | |
| Waiver of retired pay | (-$500) | |
| Disposable retired pay ($2000-$500) | $1500 | |
| Share for each party | $750 | $750 |
| Taxes (assume 20%) | $150 | $150 |
| Net payment to each after tax | $600 | $600 |
| Disability payment (tax-free) to retiree only | $500 | |
| Total payment to each after tax | $1100 | $600 |
| **Disability Waiver of $500, Equal Division of Monthly $2000 Pension, but Veteran is CRDP Eligible** | | |
| Waiver of retired pay | (-$500) | |
| CRDP return of waived retired pay | $500 | |
| Disposable retired pay ($2000) | $2000 | |
| Share for each party | $1000 | $1000 |
| Taxes (assume 20%) | $200 | $200 |
| Net payment to each after tax | $800 | $800 |
| Disability payment (tax-free) to retiree only | $500 | |
| Total payment to each after tax | $1300 | $800 |
| **Disability Waiver of $500, Equal Division of Monthly $2000 Pension, but Veteran elects CRSC** | | |
| Waiver of retired pay | (-$500) | |
| Disposable retired pay ($2000-$500) | $1500 | |
| Share for each party | $750 | $750 |
| Taxes (assume 20%) | $150 | $150 |
| Net payment to each after tax | $600 | $600 |
| Disability payment (tax-free) to retiree only | $500 | |
| CRSC payment (tax-free) to retiree only | $500 | |
| Total payment to each after tax | $1600 | $600 |

C.  A state court lacks the authority to consider CRSC to be marital property subject to distribution or to order a veteran to choose CRDP instead of CRSC.

In January 2020, Sheehy's share of Randolph's monthly retired pay plummeted from $1,097.12 to $414.59.  After Sheehy petitioned to show cause to force Randolph to comply with the property settlement agreement, the court determined that the monthly payments dropped

because Randolph had elected to receive CRSC.[6] A large portion of Randolph's retired pay was now waived to receive disability, and he received it back through CRSC which was neither taxable nor subject to marital distribution under federal law.

Federal law is clear that CRSC payments "are not retired pay." 10 U.S.C. § 1413(a)(g). Because the USFSPA allows courts to divide only "disposable retired pay" as marital property, federal law preempts a state court from treating CRSC payments as marital property. And just as federal law preempts a state court from ordering a retired veteran to compensate a former spouse for waived retired pay, federal law preempts a state court from ordering a retired veteran to give up compensation to which he is statutorily entitled. That this significantly impacts the veteran's former spouse does not alter a state court's authority.[7]

The court here lacked the authority to order Randolph to waive CRSC.[8] When a court issues an order without authority due to federal preemption, the order is void. *See Yourko*, 74

_____

[6] It is unclear from the record whether Randolph was already receiving disability pay from the VA and was CRDP eligible (such that Sheehy did not experience any reduction in her share) and then elected to switch to CRSC during the annual enrollment period in January 2020, or whether Randolph simultaneously applied for disability payments and CRSC and both took effect in January 2020. In any event, the impact was the same for Sheehy.

[7] Some commentators have observed that the "potential hardships for former spouses due to CRSC elections are remarkable." 24 J. Am. Acad. Matrim. Laws. at 164.

[8] An argument could be made under *Yourko* that the court had no authority to issue its October 2017 final decree of divorce fully incorporating the parties' property settlement agreement because of the requirement that Randolph indemnify Sheehy if he elects to receive disability compensation rather than retired pay or otherwise takes any action to reduce her share of his retired pay. On the other hand, the parties' contractual agreement to indemnify may distinguish this case from *Yourko*, where the court ordered the veteran, over his objection, to indemnify his former spouse. In any event, Randolph confirmed at oral argument that he was not challenging the validity of the prior order, so we decline to consider the issue. *See Bonanno v. Quinn*, 299 Va. 722, 736-37 (2021) (explaining "a challenge that an order is void ab initio" can be "raised only in a valid direct or collateral proceeding where the voidness of the order is properly at issue"); *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) ("[O]ur adversary

Va. App. at 98-101. So we vacate the court's order of January 27, 2022 ordering Randolph to revoke his CRSC.[9]

### D. The attorney fee award must be reconsidered.

Randolph also challenges the amount of attorney fees awarded in this case. Whether to award attorney fees in divorce proceedings is "a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion." *Northcutt v. Northcutt*, 39 Va. App. 192, 199-200 (2002) (quoting *Graves v. Graves*, 4 Va. App. 326, 333 (1987)). "The key to a proper award of counsel fees is reasonableness under all the circumstances." *Id.* at 200 (quoting *Joynes v. Payne*, 36 Va. App. 401, 429 (2001)). "The amount of the fee award rests within the sound discretion of the trial court, and we give deference to the judgment of the trial court upon appellate review." *Ulloa v. QSP, Inc.*, 271 Va. 72, 82 (2006).

Sheehy filed a show cause petition seeking to hold Randolph to the terms of their property settlement agreement. The agreement included a general attorney fee clause requiring "the losing party" to pay reasonable fees in any proceeding to enforce or prevent the breach of any provision. As Randolph was not held in contempt below, and we have vacated the court's order requiring him to revoke his CRSC, he is not the losing party.

---

system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.").

[9] In response to a request for supplemental briefing, Sheehy argued this Court lacked jurisdiction to hear an appeal from a denial of a show cause petition, citing *Jenkins v. Mehra*, 281 Va. 37, 43 (2011). This case does not fall within the common law prohibition against appealing a court's refusal to hold a party in contempt because the appeal challenges the court's orders requiring Randolph to revoke his CRSC and to pay attorney fees. *See Monds v. Monds*, 68 Va. App. 674, 684-85 (2018) (holding that *Jenkins* did not apply when husband was not found in contempt but was ordered to pay wife an equitable distribution award). A court has continuing jurisdiction over an equitable distribution award under Code § 20-107.3(K).

But the agreement's provision requiring Randolph to indemnify Sheehy if he took any action that decreased her share of his retired pay specifically included reasonable attorney fees as part of the required indemnification. "[I]f a property settlement agreement contains a provision awarding attorney's fees, the court must follow the terms of that agreement, to the extent allowable by law." *Jones v. Gates*, 68 Va. App. 100, 106 (2017).

The parties agreed that the arrearage Randolph owed Sheehy was $9,603.18. Randolph fully paid that amount in February 2021 after the first of four hearings below, resolving the dispute between them, as confirmed during the second hearing. The final two hearings were held at the request of the court to examine whether Randolph could make an irrevocable election against ever receiving CRSC and to decide whether to hold Randolph in contempt. During those hearings, Randolph maintained his continuous objection to the court's authority to force him to revoke his election to receive CRSC, and he twice asked the court to certify the issue to allow for interlocutory review. We reverse the $22,240.57 attorney fee award—nearly half of which was incurred for legal services after February 2021—and remand for reconsideration of a reasonable amount of attorney fees given this opinion vacating the January 27, 2022 order.[10]

## CONCLUSION

For these reasons, we reverse and vacate the court's January 27, 2022 order requiring Randolph to revoke his CRSC. We separately reverse and remand for reconsideration of the attorney fee award.

*Reversed in part, reversed and remanded in part.*

---

[10] Randolph also argued that the court's order was an abuse of discretion because the contract between the parties set out the exclusive remedy for any breach. Because we conclude the court was without authority to enter the order under *Yourko*, we do not reach this different question.